**Gerald Leigh KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–94–00138–CR.

Court of Appeals of Texas, El Paso.

March 21, 1996.

Thomas S. Hughes, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

**OPINION**

LARSEN, Justice.

This is an appeal from a conviction for the offense of murder. A jury convicted appellant, Gerald Leigh King, and sentenced him to seven years' confinement in the Texas Department of Corrections—Institutional Division. We affirm the conviction.

## FACTS

On the morning of January 9, 1992, King returned home after taking his two children to school. King's wife, Man Li King, was still in bed when he returned. Shortly after King's return, the couple began arguing over family finances. After arguing for an hour to an hour and a half, King pushed his wife causing her to fall and strike her head on the floor. King testified that he merely intended to push his wife out of the way and did not intend to cause her death or serious injury. King thought the fall mortally injured his wife. He checked his wife for vital signs and determined that she was breathing and had a pulse. King testified that after checking his wife's vital signs, he did not remember exactly what happened. He did recall that he was afraid of the consequences of his wife dying during a "family fight" and he "tried to make it look like somebody [else] had done it." In order to make it appear that someone else had killed his wife, King went to his garage, got an electrical cord, and returned to the bedroom where his wife was lying on the bed. King choked his wife with the cord.

King's testimony becomes somewhat contradictory at this point. King first admitted that he knew his wife was still alive when he choked her, but he thought she had been "mortally wounded." King further admitted that his wife died because he had choked her. Testimony and a report from the medical examiner confirmed that Man Li King died from asphyxia due to ligature strangulation. King later testified that at the time he choked his wife, he thought she was already dead. King recanted after that, however, again stating that he thought his wife was "mortally injured" at the time he choked her, and admitting that "mortally injured" is not the same thing as "dead." At yet another point, King claimed that he was not aware of what he was doing at the time he choked his wife, but he assumed he choked her with the electrical cord because police found the cord in his car. Finally, King testified that by choking his wife, he thought "... I was creating evidence that somebody else had done this and I was doing it to a mortally injured person.... I had done it [choked his wife] long enough so I thought that I was

there that she had been choked by a person unknown."

After choking her, King dressed his wife, stuffed her body in the trunk of his car, drove to the desert just outside the populated area of town, and dumped her body by the roadside. He did this also in furtherance of his plan to make it appear that someone unknown had killed Man Li King. King reported his wife missing late that evening, and gave a statement to the police claiming to have found her missing upon returning home from running errands late that afternoon. The next day, King made a second statement to police, this time admitting that he had "shoved" his wife, causing her to fall and lose consciousness. In the second statement, King said that he panicked after he could not revive his wife, so he choked her and disposed of her body in the desert. He then disposed of the comforter that had been on the bed when he choked her.

### Failure to Instruct the Jury on "Accident"

■ In his first point, Kings asserts reversible error in the trial court's failure to include the following instruction in the jury charge:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct including an act, omission or possession. Conduct is not rendered involuntarily merely because a person did not intend the results of his conduct. Therefore if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Gerald King, did cause the death of Man Li King by strangling her with a [sic] electrical cord as alledged [sic] in the indictment, if you further believe from the evidence or you have a reasonable doubt thereof that the strangling was a result of an accident and was not the voluntary act or conduct of the defendant you will acquit the defendant and say by your verdict not guilty.

The trial court refused to submit the instruction as requested.

Accident is not a defense under the Texas Penal Code. *Adanandus v. State*, 866 S.W.2d 210, 229 (Tex.Crim.App.1993), *cert.*

*denied,* —— U.S. ——, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Williams v. State,* 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (en banc). Although previously a defense, it is now encompassed by TEX.PENAL CODE ANN. § 6.01(a) (Vernon 1994) which provides that "[a] person commits an offense only if he voluntarily engages in conduct.... " *Id.* If the issue is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the *conduct* of which he is accused. *Adanandus,* 866 S.W.2d at 229, *citing Williams,* 630 S.W.2d at 644 (emphasis in original). Here, the relevant conduct is the act of strangling. In this case, there is no evidence that King "accidentally" engaged in the conduct of strangling his wife. In fact, King's own testimony indicates that he engaged in the choking voluntarily. King testified that he strangled his wife in an intentional effort to make it look as if someone else had killed her. Thus, the evidence did not raise the issue of accidental conduct, and the trial court did not err in refusing to give the instruction.

### Failure to Instruct the Jury on "Mistake"

■ In his second point, King alleges reversible error in the trial court's refusal to give the following instruction on the issue of mistake to the jury:

> You are instructed that it is a defense to prosecution that a person through mistake formed a reasonably [sic] belief about a matter of fact if mistaken [sic] belief negated the kind of culpability required for commission of the offense charged. By the term reasonable belief it is meant a belief that would be held by an ordinary and prudent person the same circumstances [sic] as the defendant. Therefore if you believe from the evidence that on the occasion in question the defendant, Gerald King, through mistake, formed a reasonable belief about the fact that Man Li King was dead prior to his act of strangling her with a [sic] electrical cord or if you have a reasonable doubt thereof, you will find the defendant not guilty.

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense. TEX.PENAL CODE ANN. § 8.02(a) (Vernon 1994). The question on appeal is whether the evidence raised the issue of mistake of fact. *Lynch v. State,* 643 S.W.2d 737 (Tex.Crim.App.1983) (en banc); *Miller v. State,* 666 S.W.2d 564, 566 (Tex.App.—Houston [14th Dist.] 1984, no pet.). The evidence does not raise the issue of mistake of fact unless the appellant, through mistake, formed a *reasonable* belief about a matter of fact. TEX.PENAL CODE ANN. § 8.02(a) (Vernon 1994); *Miller,* 666 S.W.2d at 566. In this case, King alleges that he could not have had the requisite intent to kill his wife by choking her with the electrical cord because, when he choked her, he mistakenly thought she was already dead.

■ In this case, we do not find that King formed a *reasonable* belief that his wife was already dead when he choked her. King consistently testified that he thought his wife was "mortally wounded" at the time he choked her. He repeatedly admitted that she was still alive, but he thought she would die as the result of her fall. Thus, most of King's testimony does not raise the issue of any mistaken belief that Man Li King was already dead, as opposed to seriously wounded, when King choked her. There is one statement in the record, however, in which King asserts that he believed his wife was dead at the time he choked her. A defendant is entitled to an instruction on each defensive issue raised by the evidence, regardless of the strength of that evidence. *Johnson v. State,* 629 S.W.2d 731, 733 (Tex. Crim.App.1981) (en banc); *Musick v. State,* 862 S.W.2d 794, 797 (Tex.App.—El Paso 1993, pet. ref'd). Even this statement does not raise the issue of mistake of fact, however, because any belief King may have had that Man Li King was dead when he choked her was not reasonable.

■ Where the alleged mistaken fact is a matter that is readily discernable by a simple empirical method of investigation that is universally accepted, a mistake of fact defense is not raised by the accused's failure to properly utilize that method. *Miller,* 666 S.W.2d at 566 (mistake about length of barrel of gun

did not raise issue of mistake of fact in prosecution for possession of illegal weapon where simple measurement would have easily determined length). King testified that he checked his wife's vital signs before he choked her and found that she was breathing and had a pulse. It is universally accepted that a person who is breathing has a pulse without intervention of medical technology and is not dead. Undoubtedly, there are circumstances under which a lay person could mistake a living person for dead, but such circumstances are not present here. In this case, King testified that his wife had a pulse and was breathing when he went to the garage to get the electrical cord. The "mistake" alleged here not only was easily verifiable, but was actually verified to the contrary by the defendant. It was not reasonable for King to mistake a breathing person with a pulse for dead and the evidence thus failed to raise the issue of mistake of fact. The trial court did not err in refusing to instruct the jury on mistake. Accordingly, we overrule Point of Error Two.

### CONCLUSION

Having considered and overruled both of King's points of error, we affirm the judgment of the trial court.