TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-01-00063-CR






Stephen Christopher Kuhns, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY


NO. 52,918, HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING






 Appellant Stephen Christopher Kuhns appeals his conviction for driving while license
suspended (DWLS). Tex. Transp. Code Ann. § 601.371(a) (West 1999). The jury found appellant
guilty of the offense charged. The trial court then assessed appellant's punishment at 152 days in
the county jail and a fine of $500.


Points of Error


 Appellant advances ten points of error. Some of the points are unusually framed, but 
appellant apparently contends that he was denied the right of self-representation; that the State failed
to provide evidence as required by Brady v. Maryland, 373 U.S. 83 (1963); and that the trial court
erred in failing to submit the defenses of mistake of fact and of law to the jury, in failing to grant a
new trial on the basis of newly discovered evidence, and in failing to bar the conviction on the basis
of collateral estoppel. In addition, appellant claims that a DWLS conviction based on "actual notice"
violates due process of law, that the complaint was at variance with the information, and if none of
the contentions have merit, he is entitled to a new trial on the basis that he was deprived of the
constitutional right of the effective assistance of counsel. We will affirm the conviction.


Information


 The amended information provides in pertinent part that on or about July 6, 1998 in
Hays County appellant:


 did then and there intentionally and knowingly operate a motor vehicle upon a public
highway during a period that the Texas driving privilege of the said Stephen
Christopher Kuhns was suspended or revoked under the provisions of The Texas
Transportation Code, Article 6701h, §§ 13(a), and 14(a), Vernon's Texas Civil
Statutes. (1)



 The prosecution was brought under chapter 601, Motor Vehicle Safety Responsibility
Act, subchapter L., section 601.371, Tex. Transp. Code Ann. § 601.371 (West 1999). The offense
charged occurred on July 6, 1998, after the enactment of the Transportation Code in 1985, but the
suspension of the license occurred in 1993 when the civil statutes governed the procedure of
suspension and notice. The record reflects that the suspension of appellant's driver's license was
ordered as a result of an unsatisfied liability judgment against appellant arising out of an automobile
accident, hence the particular DWLS prosecution under section 601.371.

 One of the difficulties involved in dealing with the issues in this case is that section
601.371 was not cited or mentioned at trial nor were any of its provisions as to notice, defense, and
presumption utilized by the parties. Moreover, no reference is made on appeal to this particular
section.

Facts


 In order that appellant's contentions be placed in proper perspective, a review of the
facts is necessary. On July 6, 1998, Deputy Bo Kidd of the Hays County Sheriff's Office observed
appellant driving a motor vehicle on County Road 101. Deputy Kidd observed that appellant's
vehicle had an expired inspection sticker and an expired motor vehicle registration. The officer
stopped appellant. Kidd was familiar with appellant because he had stopped appellant for the same
traffic violations on July 1, 1998. On that date, it was discovered appellant had no automobile
liability insurance and that appellant's driver's license had been suspended. Appellant insisted that
he was on his way to the Texas Department of Public Safety (DPS) to "clear up the problem" with
the suspension of the license. Deputy Kidd permitted appellant to proceed on his way. Five days
later, Kidd arrested appellant for the expired registration, expired inspection sticker, and for the
failure to have liability insurance. At the jail, Kidd was able to confirm again that appellant's
driver's license, number 06708052, had been suspended. Appellant was then arrested for DWLS.

 The State offered evidence in the form of certified copies of the DPS record showing
that appellant had been issued driver's license No. 06708052 on March 13, 1969, and that the license
had been suspended on November 22, 1993. The State also showed that the basis of the suspension
was an unsatisfied liability judgment in a justice of the peace court dated June 9, 1993, in the amount
of $2,584.66 growing out of an 1991 automobile accident. Appellant had filed a pro se answer to
the lawsuit giving his address as P. O. Box 242, Dripping Springs, Texas, which is the same address
to which the DPS letter or order of suspension was mailed on November 22, 1993.

 Appellant testified that he did not receive any letter or order of suspension at the
Dripping Springs address; and that he did not drive his vehicle on July 6, 1998, in Hays County
knowing that his driver's license was suspended. He related that he moved to Austin in 1991 but
was still receiving mail at the Dripping Springs address in 1993, and that it was possible he was still
receiving mail there in November 1993. He did not know when his post office box was closed
because he could not "pay the bill." Appellant did not testify that before November 22, 1993, he had
given the DPS notice of a change of address that he had moved from the Dripping Springs address
as listed on his driver's license as required by law. See Tex. Transp. Code Ann. § 521.054 (West
1999). (2) Appellant related that at the time of trial, he lived at 3204 Western Drive in Austin, and that
sometime in 1998 he had notified the DPS of his change of address to the office of his attorney, John
Stayton, 919 Congress Avenue in Austin. When shown State's exhibit No. 1, a certified copy of a
DPS record dated November 1, 1999, appellant agreed it showed his address as 4002 Duval Street,
Austin.

 Appellant related that his first arrest for DWLS was on Christmas Eve 1994, in
Caldwell County. He introduced certified copies of complaints, informations, and dismissal
motions. One set of documents from Washington County alleged a DWLS offense on or about May
10, 1995. Two sets of documents were from Travis County alleging offenses of DWLS on or about
January 4, 1996, and on or about April 12, 1996. These documents show all three cases were
dismissed. Appellant claimed the earliest one was also dismissed.

 The Washington County case document simply listed the reason for dismissal as
"insufficient evidence." The two Travis County cases indicated dismissals because of a conviction
in another case (speeding and "no insurance"). Each of the Travis county cases also listed as a
second reason "defective service of notice of suspension."

 Without giving dates, appellant testified that on several occasions he talked to DPS
employees who told him that the suspension of his driver's license was invalid but that he would
have to have an attorney call them to have the suspension removed from their computers. Appellant
claimed that in 1999 he was stopped while driving in downtown Austin by a DPS officer; that he
heard the officer's conversation with the dispatcher who reported appellant's license was suspended
but "unresolved and indeterminate"; and that the officer let him go. Appellant testified that based
on his conversation with attorneys, judges, and patrolmen, he did not believe the suspension was
valid.

 Appellant admitted that all he had now was an expired license and that he had never
tried to renew it nor had he paid or settled the outstanding liability judgment against him. Appellant
acknowledged that some time prior to July 6, 1998 (the date of the instant offense), he had talked
to an assistant district attorney in Hays County about the reason behind the suspension of his driver's
license. He denied, however, that the prosecutor had ever told him that the suspension would not
be "lifted" until the liability judgment had been paid.

 Shannon Fitzpatrick testified that she had served for one year as a prosecutor in Hays
County. Prior to July 6, 1998, and while she was a prosecutor, Fitzpatrick encountered appellant in
the courtroom, apparently concerning a DWLS matter. Although the conversations were not
developed as well as they might have been, Fitzpatrick stated that appellant asked for a dismissal of
a case because of a mix-up in paper work. She asked that the case be re-set, advised appellant to
obtain a lawyer, and agreed to check on his allegations. In that or a later conversation, Fitzpatrick
told appellant there was an outstanding liability judgment underlying the suspension of his license
which would have to be satisfied.

 The trial court submitted the case to the jury tracking the amended information.


Initial Contention


 First, appellant argues that the "trial court erred because there was no evidence at trial
affirmatively showing that the DPS never [sic] gave the statutory notice required for license
suspension thereby eliminating any issue of fact as to whether the defendant could be charged with
DWLS."

 To preserve error, an accused must make a timely, specific motion or objection and
secure an adverse ruling from the trial court. Tex. R. App. P. 33.1. If an accused fails to do so, he
normally forfeits the right to complain on appeal about the action of the trial court. Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Appellant does not direct our attention to any portion
of the record concerning any action or ruling of the trial court which constitutes error on the part of
the trial court preserved by a timely and specific objection. Tex. R. App. P. 38.1(h). The point of
error is confusing as written. The trial court has no burden of going forward with the evidence or
sustaining the burden of proof beyond a reasonable doubt. Tex. Pen. Code Ann. § 2.01 (West 1994). 
That is the function of the prosecution. Id.; Vantil v. State, 884 S.W.2d 212, 214 (Tex. App.--Fort
Worth 1996, no pet.). 

 If it be appellant's contention that the evidence was insufficient, legally or factually,
to sustain the conviction, he does not label it as such, cite authorities, or discuss the standards of
review. An appellate "brief must contain a clear and concise argument for the contentions made with
appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Appellant's point
of error presents nothing for review.

 There is another reason for the same conclusion. Other contentions advanced
rendered the point of error multifarious. Appellant claims a variance as to addresses in State's
exhibits 1 and 2. These exhibits contained certified excerpts from appellant's DPS driver's license
record. State's exhibit one reflects appellant's address as "4002 Duval Street, Austin, Tx 78751"
and State's exhibit two reflects that the order or letter of suspension issued November 22, 1993,
reflects the address of "P. O. Box 242, Dripping Springs, TX 78602." What appellant overlooks is
that the exhibits were certified on November 1 and 2, 1999, showing what the record reflected on
those dates, and does not constitute a variance as to appellant's address in 1993. Appellant also tries
to blend into his contention evidence developed at the hearing on the motion for new trial and not
before the trial court at trial.

 Appellant further urges, without citation of authority, that "actual notice" of the
suspension order is not permitted under the statutes. The multifarious point of error, inadequately
briefed, presents nothing for review. Point of error I is overruled.


Variance


 In point of error II, appellant urges that the "trial court erred because the notice of
suspension evidence offered to support the conviction was insufficient as a matter of law."

 In his argument, appellant appears to claim a variance between the wording of former
article 6701h, section 13 of the Texas Revised Civil Statutes in effect in 1993, as to the certification
of the mailing of the notice or order of suspension, and the wording of the certificate of mailing
stamped on the letter or order of suspension dated November 22, 1993, that was introduced into
evidence. We do not find the variance to be substantial. If appellant objected on this basis to the
introduction of the suspension letter, appellant has not directed our attention to any portion of the
record where such objection was made. Tex. R. App. P. 38.1(h). Here again, appellant does not
explain how his claim is trial court error. Appellant mentions that certified mail is one method for
service of citation in civil cases. Tex. R. Civ. P. 106(A)(2). He does not show how that rule applies
to the facts of the instant case. Appellant cites several civil cases and urges that the statutory
language should be used "for a notice of license suspension."

 Insofar as appellant's point of error gives the impression of a challenge to the
sufficiency of the evidence, we observe that this matter is not briefed. It is not the task of an
appellate court to speculate as to the nature of an appellant's legal claim or hunt and search through
a voluminous record in an attempt to verify what may be appellant's claim. Alvarado v. State, 912
S.W.2d 199, 210 (Tex. Crim. App. 1995). Further, we are not required to brief appellant's case for
him. Garcia v. State, 887 S.W.2d 862, 882 (Tex. Crim. App. 1998). Point of error II is overruled.


A Claim of Due Process


 In point of error III, appellant contends "[t]hat to allow the DPS to enforce its own
notion of notice or to allow a conviction to stand based on 'actual notice' violates due process of
law." The point of error is oddly worded and the argument is difficult to follow. No reference to
the record is made. Appellant does not tell us how this "contention" was preserved for review nor
does he claim that this matter may be raised for the first time on appeal. Even constitutional rights
may be waived. Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Appellant does not
define what he means by "notion of notice" or "actual notice."

 Appellant argues that a driver's license is a privilege but that it may not be taken away
without procedural due process under the Fourteen Amendment to the United States Constitution
and due course of law under article I, section 19 of the Texas Constitution. Appellant asserts that
due process required that "notice of the suspension in the manner required by the statute would allow
a hearing that would offer a useful process in determing the fundamental fairness of the deprivation." 
Appellant urges that he was entitled to an administrative hearing prior to trial. (3) The argument is not
"clear and concise" as required. Tex. R. App. P. 38.1(h). Moreover, the contention was not
preserved for review. Tex. R. App. P. 33.1(a). Point of error III is overruled.


Motion for New Trial


 In point of error IV, appellant claims that the "trial court erred because it should have
granted the defendant a new trial based on newly discovered evidence." Appellant urges that the trial
court abused its discretion in overruling the motion for new trial on the basis claimed. That is the
standard of review. See Rent v. State, 982 S.W.2d 382, 384 (Tex. Crim. App. 1998); Gonzales v.
State, 885 S.W.2d 692, 696 (Tex. Crim. App. 1983). An abuse of discretion occurs when the trial
court's decision was arbitrary or such that it "was so clearly wrong as to lie outside that zone within
which reasonable persons might disagree." Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992).

 Article 40.001 provides: "A new trial shall be granted an accused where material
evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art.
40.001 (West Supp. 2002). This statute, enacted in 1993, withdrew from the Court of Criminal
Appeals its rule-making authority with respect to rules of appellate procedure relating to granting
a new trial on grounds of evidence other than material evidence discovered after the trial of an
offense. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 11.01, 1993 Tex. Gen. Laws 3586, 3765,
eff. Sept. 1, 1993; see 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice
and Procedure, § 41.41 (2d ed. 2001). As a result, former rule 30(b)(6) was deleted. See Tex. R.
App. P. 21 (notes and comments) (West 2001). Article 40.001 returns the law to its pre-rule status. 
Ashcraft v. State, 918 S.W.2d 648, 652-55 (Tex. App.--Waco 1996, pet. ref'd).

 In 1985, before the adoption of the Rules of Appellate Procedure, the Court of
Criminal Appeals set forth the following formulation:


 The overruling of a motion for new trial based upon newly discovered evidence will
not constitute an abuse of discretion unless the record shows (1) the evidence was
unknown to the movant before trial; (2) that the defendant's failure to discover it was 
not due to want of diligence on his part; (3) that its materiality was such as would
probably bring about a different result on another trial; and (4) that it was competent,
not merely cumulative, corroborative, collateral or impeaching. Van Byrd. v. State,
605 S.W.2d 265 (Tex. Cr. App. 1980); Hernandez v. State, 507 S.W.2d 209 (Tex. Cr.
App. 1974). To be material the new evidence must be shown to be probably true and
of such weight as to probably produce a different result at another trial. Van Byrd,
supra; Eddlemon v. State, 591 S.W.2d 847 (Tex. Cr. App. 1980). The trial judge
determines whether the new evidence is probably true.



Boyett v. State, 692 S.W.2d 512, 516-17 (Tex. Crim. App. 1985).

 At the hearing on the motion for new trial in the instant case, appellant introduced the
record of the new trial hearing in cause number 561,885 wherein appellant was convicted of DWLS
in a subsequent trial in County Court at Law No. 3 in Travis County. (4)

 Appellant cites no authority on appeal dealing with motions for new trial much less
any authority where the motion was based on newly discovered evidence which is the basis for his 
point of error. Appellant raises general matters which he contends entitle him to a new trial. At trial,
the State introduced a letter or order of suspension of appellant's driver's license dated November
22, 1993, with a certificate of service (mailing) stamped thereon. At the new trial hearing, appellant
testified that in the prior cases of DWLS which had been dismissed, there was no stamp showing a
certificate of mailing on the DPS letter; and that Drew Phipps, his attorney, in two of the prior cases,
testified that he saw no certificate of mailing on the letter when he represented appellant. Appellant
does not demonstrate how this was newly discovered evidence. Appellant urges that the certificate
showing service by mailing on the letter in the instant case was stamped on the front of the letter and
signed by a Joyce Stevens, while in the Travis County case (cause number 561,885) the certificate
of service on the suspension letter was stamped on the back and signed by Linda Beline.

 Appellant calls attention to the affidavits of Kathleen Wilkerson and Jill Bosch that
after the instant trial they saw the suspension letter at the DPS office without a stamp, but when they
obtained a certified copy of the letter from DPS the certificate of service (mailing) was stamped
thereon. Appellant refers to this matter as a "stamping morass," a "stamping subterfuge" and a
"three card monty" process. None of the foregoing contentions meet the requirements of Boyett.

 Next, appellant contends that the exhibits offered at the new trial hearing show that
he was granted "a restricted license," that the papers in connection therewith gave his address as
"4002 Duval Street, Austin," and the DPS was made aware of this address in April or May 1993
prior to the letter of suspension being mailed to him at P. O. Box 242, Dripping Springs in
November 1993. An examination of the records introduced by appellant show that on April 15,
1993, appellant obtained an order from a district court granting him an occupational license
following a conviction for driving while intoxicated and a separate suspension of his driver's license. 
While the Duval Street address was involved in the issuance of the occupational license, the record
does not show, and appellant does not claim, that he gave an official notice of a change of address
from the Drippings Springs address on his driver's license as required by law. Under any
circumstances, this matter was not unknown to appellant nor was he unaware of it so that it would
constitute newly discovered evidence entitling him to a new trial.

 Appellant simply has not shown he is entitled to a new trial based on newly
discovered evidence. Motions for a new trial based on claims of newly discovered evidence
traditionally lack favor with courts and are viewed with cautious scrutiny. Drew v. State, 743
S.W.2d 207, 225 (Tex. Crim. App. 1987). The trial court did not abuse its discretion in overruling
the new trial motion as claimed by appellant. Molinar v. State, 910 S.W.2d 572, 583 (Tex. App.--El
Paso 1995, no pet.). Point of error IV is overruled.


A Brady Violation Claimed


 In point of error V, appellant contends that the "judgment of the trial court should be
reversed because the failure of the State to provide the returned envelope is a reversible Brady
violation."

 The trial court granted a general Brady v. Maryland, 373 U.S. 83, 87 (1963) pretrial
motion. The motion made no specific mention of a "returned envelope." The point of error and the
argument offered does not identify the envelope. There are numerous letters and several envelopes
in this voluminous record consisting of two trials. We shall assume that appellant is referring to an
envelope post-marked November 22, 1993, addressed to appellant at Post Office Box 242, Dripping
Springs, Texas, the address on his driver's license. This envelope was marked, "Return to
sender--forwarding address expired." (5) While the order of the license suspension was dated
November 22, 1993, there was no showing that the order was mailed in this particular envelope or
that the only correspondence with appellant on November 22, 1993, by the DPS was the suspension
order.

 When the prosecution suppresses evidence favorable to the accused, due process is
violated when the evidence is material either to guilt or punishment, irrespective of the good or bad
faith of the prosecution. Brady, 373 U.S. at 87; Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App.
2000). Brady material includes both exculpatory and impeachment evidence. United States v.
Bagley, 473 U.S. 667, 676 (1985); Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). 
Evidence suppressed by the prosecutor is "material" if there is "a reasonable probability that had the
evidence been disclosed to the defense, the outcome of the proceeding would have been different." 
Bagley, 473 U.S. at 682; Wyatt, 23 S.W.2d at 18. A "reasonable probability" is a "probability to
undermine confidence in the outcome." Wyatt, 23 S.W.3d at 27.

 To prevail on his Brady claim, appellant must show that (1) the prosecution
suppressed or withheld evidence; (2) the suppressed evidence would have been favorable to the
accused; and (3) the evidence was material to the accused's defense. Thomas, 841 S.W.2d at 404.

 In evaluating a Brady claim, we must determine whether the favorable evidence was
withheld by the State or its agents. Juarez v. State, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969). 
The duty of disclosure exists only if the State has control over, access to, or at least knowledge of
the evidence. See Hafdahl v. State, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990). The
prosecutor's office "is an entity" for due process purposes. See Giglio v. United States, 405 U.S.
150, 154. Moreover, the Court of Criminal Appeals has focused upon "the prosecution team," which
includes both prosecutorial and investigative agencies, at least where those are part of the same
government. Ex parte Brandley, 781 S.W.2d 886, 892 n.7 (Tex. Crim. App. 1989); see also Ex parte
Castellano, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993). But not all governmental agencies are
necessarily part of "the prosecution team." Shanks v. State, 13 S.W.3d 83, 86 (Tex.
App.--Texarkana 2000, no pet.) (Department of Criminal Justice was not part of prosecution team). 
In Wyatt, 23 S.W.3d at 27, the information in the file of an investigator for the pathologist's office
was held not in the possession of the State for Brady purposes. In any case, the accused must show
that the exculpatory evidence was in the possession of a person who is part of the prosecuting team. 
Id. There is no general public records exception to the Brady rule. Dalbosco v. State, 978 S.W.2d
236, 238 (Tex. App.--Texarkana 1998, pet. ref'd). "Documents, however, that are a part of public
records are not deemed suppressed by the prosecution if defense counsel should know of them and
fails to obtain the records because of a lack of diligence in his own investigation . . . ." Id. The
necessary inquiry is whether the defendant knew or should have known facts that would have
allowed him to access the undisclosed evidence. Id.

 In the instant case, the Hays County prosecutor did not have possession of the
envelope in question and nothing reflects that the prosecution knew of the envelope. The document
was in the possession of the custodian of the records of the DPS, and it is not shown that the DPS
did any investigative chores so as to constitute that agency part of the prosecution team. Appellant's
counsel obtained the envelope after trial when he issued a subpoena duces tecum in another DWLS
case against appellant in Travis County and by agreement received appellant's entire driving record. 
In light of the extensive prior litigation of his DWLS cases, appellant should have known that if there
was any favorable and material evidence, it might well be contained in his driving record with the
DPS which was available to him. We do not conclude that the granting of the general Brady motion
here required the prosecutor to search the records of the DPS or other governmental agencies to find
evidence that might be favorable and material to an accused's case to prevent being labeled a
suppressor. In view of the record and all of the evidence appellant offered at the new trial hearing,
we conclude that there is no reasonable probability that had the complained-of evidence been
disclosed to the appellant, the outcome of the proceeding would have been different. Point of error
V is overruled.


Self-Representation


 In point of error V-a, appellant contends that the "trial court erred because it did not
allow the Defendant to proceed pro se in violation of the Texas and United States Constitution."

 Putting aside the extraneous and immaterial matters advanced in appellant's
argument, we observe that a defendant in a criminal trial has the constitutional right to counsel under
the Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas
Constitution. Faretta v. California, 422 U.S. 806, 819-20 (1975); Fulbright v. State, 40 S.W.3d 228,
238 (Tex. App.--Fort Worth 2001, pet. ref'd). The right to counsel may be waived and a defendant
may then constitutionally choose to represent himself at trial. Faretta, 422 U.S. at 819-20; 
Fulbright, 41 S.W.3d at 238. The right to waive counsel and proceed pro se is made knowingly and
intelligently if it is made with a full understanding of the right to counsel which is being abandoned
as well as the dangers and disadvantages of self-representation. Collier v. State, 959 S.W.2d 621,
626 (Tex. Crim. App. 1997).

 The picture painted by this record lacks clarity as to all the defense counsel who
graced the stage at the scene of this trial and its earlier proceedings. With the exception of a post-trial order, (6) we have not found in the record orders of appointment or withdrawal of counsel. The
State tells us attorney Michael Schulman was appointed to represent appellant in a companion case
(cause number 52,228 in Hays County), but that he withdrew and attorney Larry Rasco was
appointed in the companion cause to represent appellant and as "standby counsel" in the instant
cause (number 52,918). Rasco apparently withdrew and attorney Kyle Maysel was appointed in both
causes. At a pretrial hearing on November 29, 1999, the trial court allowed attorney Maysel to
withdraw and pointed out to appellant that he had had three attorneys at county expense. At this
point appellant asserted his right to self-representation in the instant cause, if he had not done so
before. The trial court permitted appellant to proceed pro se and reset the case for trial. When the
trial court continued to mention the disadvantages of self-representation, appellant agreed. He
stated:


 I don't have the trial experience. I would like to have an attorney if it's going to trial. 
I think it's absolutely necessary. I don't believe that I can adequately represent
myself at a trial under the conditions that I'm looking at.



 Attorney Polk Shelton was then appointed to represent appellant and he did so at a
pretrial hearing and at trial. On October 23, 2000, prior to voir dire examination of the jury panel,
appellant raised a question about self-representation. The trial court informed appellant that Shelton
had been appointed in both of appellant's cases. Later, appellant stated pro se that he was being
deprived of the right of self-representation, that he was to be the attorney and his attorney was to be
stand-by counsel. The trial court "noted" the objection and the trial proceeded.

 An accused's constitutional rights to represent himself cannot be manipulated in such
manner as to throw the process into disarray. Dunn v. State, 819 S.W.2d 510, 520 (Tex. Crim. App.
1991); Hubbard v. State, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987); Fulbright, 41 S.W.3d at 235. 
Throughout the proceedings, appellant exercised his right to counsel, to appointed counsel, and
asserted his right to self-representation with or without standby-counsel. Two or three counsel were
appointed and allowed to withdraw because of appellant's or counsel's dissatisfaction or to allow
self-representation. In the process, the trial was delayed again and again. Once appellant obtained
his right to represent himself in this case, he changed his mind and another counsel was appointed. 
The trial court did not err in refusing to allow appellant to continue to manipulate the process.

 Moreover, an accused has no absolute right to hybrid representation. See McKaskle
v. Wiggins, 465 U.S. 168, 183 (1984); Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App.
1980). A trial court may, in its discretion, permit both counsel and accused to jointly participate in
the case. Webb v. State, 533 S.W.2d 780, 784 n.2 (Tex. Crim. App. 1976). With one exception, the
trial court liberally allowed hybrid representation throughout the instant trial. Point of error V-a is
overruled.


Jury Instructions


 In point of error VI, appellant urges that the "trial court erred because it failed to offer
a jury instruction allowing it to find mistake of law or mistake of fact when the evidence properly 
raised the defense." (Emphasis added.) The point is multifarious despite the wording. Two separate
and distinct defenses are involved. 

 Despite the multifarious nature of the point of error, we shall separate the contentions 
for the purpose of discussion. A defendant is entitled to an instruction on every defense raised by
the evidence. White v. State, 844 S.W.2d 929, 933 (Tex. Crim. App. 1992). The defendant has the
burden of producing sufficient evidence to raise a defensive issue. Riddle v. State, 888 S.W.2d 1,
6 (Tex. Crim. App. 1994). The instruction is not required if the evidence viewed in the light most
favorable to the defendant does not raise the issue. Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim.
App. 1984). 

 Without citing or applying the statutory defenses involved, appellant calls attention
to his own testimony that he did not believe that his driver's license was properly suspended and that
the DPS would not remove the suspension from its record. Appellant then sets out the following
from his direct examination:



 And as far as you know your license is not suspended or it's got some problem
with being suspended.




 That is correct.




 Have you intentionally or knowingly operated a motor vehicle on a public
highway in Texas during a time when you knew that your license was suspended
or revoked under the provisions of 6071h, 13 or 14 of the Vernon's Civil
Statute?



 Have you?



 I'm sorry, No.




 Have you operated a motor vehicle when your license, knowing your license was
suspended?


 

 A: No.



 Appellant tells us that "[t]his testimony gave rise to the issue of mistake of fact and
mistake of law." (Emphasis added.)


Mistake of Law


 Section 8.03 of the Penal Code provides in pertinent part:



 It is no defense to prosecution that the actor was ignorant of the provisions of any law
after the law has taken effect.

 It is an affirmative defense to prosecution that the actor reasonably believed the conduct
charged did not constitute a crime and that he acted in reasonable reliance upon:

 
 an official statement of the law contained in a written order or grant of permission
by an administrative agency charged by law with responsibility for interpreting the
law in question; or

 a written interpretation of the law contained in an opinion of a court of record or
made by a public official charged by law with responsibility for interpreting the law
in question.


 


Tex. Pen. Code Ann. § 8.03 (West 1994).

 A party making objections to the court's charge to the jury must "distinctly" specify
each ground of objection. Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2002). Appellant
objected to the court's charge "for the reason that it fails to contain a charge on mistake of fact which
is raised by the evidence. Secondly, and supplemental thereto, we object to the court's charge in that
it fails to allege a mistake of law which is raised by the evidence." The objections were overruled. 
The objections were general and did not comply with article 36.14. Appellant did not tell the trial
court what evidence raised the issue, what evidence caused appellant to "reasonably believe" (7) that
the conduct charged did not constitute a crime. Further, appellant in his objection did not point out
to the trial court what written official statement of the law or written interpretation of the laws
contained in an opinion or made by a public official as defined in section 8.03(b) upon which he
"acted in reasonable reliance." Id. No documents so defined are in evidence. In his appellate
argument, appellant does not mention such documents, if any. In order to be entitled to a mistake
of law defense instruction, a defendant must meet the requirements of section 8.03(b). Green v.
State, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992). We do not find that "the specific grounds were
apparent from the context." Tex. R. App. 33.1(a)(1)(A). Appellant's objection was too general to
preserve error. Williams v. State, 930 S.W.2d 898, 903 (Tex. App.--Houston [1st Dist.] 1996, pet.
ref'd) (citing Pennington v. State, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985)).

 Appellant did testify that the prior DWLS cases against him had been dismissed. 
These dismissals do not qualify as acceptable documents under section 8.03(b)(1), (2). Perhaps for
this reason, appellant did not rely upon these dismissals under this point of error.

 Appellant also testified that DPS employees told him the suspension of his driver's
license was invalid but an attorney would have to contact DPS about a removal of the suspension. 
Incorrect legal advice is not sufficient to establish either a mistake of law or a mistake of fact. 
Barrera v. State, 978 S.W.2d 665, 671 (Tex. App.--Corpus Christi 1998, pet. ref'd); Gallegos v.
State, 828 S.W.2d 577, 579 (Tex. App.--Houston [1st Dist.] 1992, no pet.); Austin v. State, 769
S.W.2d 369, 372 (Tex. App.--Beaumont 1989, pet. ref'd); Linder v. State, 734 S.W.2d 168, 171
(Tex. App.--Waco 1987, pet. ref'd) (pre-offense advice from district attorney).

 Under the circumstances, no error is presented by the trial court's refusal to include
a mistake of law defense instruction in the court's charge.








Mistake of Fact


 Section 8.02(a) provides:


 It is a defense to prosecution that the actor through mistake formed a reasonable
belief about a matter of fact if his mistaken belief negated the kind of culpability
required for the commission of the offense.



Tex. Pen. Code Ann. § 8.02(a). Mistake of fact constitutes a defense to criminal responsibility to
the extent it negates the necessary mens rea of the offense. Id. The defense requires a reasonable
belief on the part of the defendant. Id. The trial court must give the instruction upon proper
objection or request if the evidence raises the issue. Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim.
App. 1990). Thus, the objection must be proper and the issue must be raised by evidence.

 Appellant's general objection to the court's charge is set out above. It clearly does
not distinctly specify the grounds or basis for the objection or what mistake of fact is involved as
required by statute. Tex. Code Crim. Proc. art. 36.14 (West Supp. 2002). The trial court should not
be "sandbagged." Pennington, 697 S.W.2d at 390. The objection was not proper. Id.

 Was the issue of mistake of fact even raised by the evidence? The evidence does not
raise the issue unless the defendant, through mistake, formed a reasonable belief about a matter of
fact. King v. State, 919 S.W.2d 819, 821 (Tex. App.--El Paso 1996, no pet.). The mistaken belief
must negate the kind of culpability required for the commission of the offense. Id.; Thomas v. State,
855 S.W.2d 212, 214 (Tex. App.--Corpus Christi, 1993, no pet.). "Kind of culpability" refers to
the culpable mental state or states required in the offense with which the accused is charged. See
Brumley v. State, 804 S.W.2d 659, 662 (Tex. App.--Amarillo 1991, no pet.); see also Miller v. State,
815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); Egger v. State, 817 S.W.2d 183, 187
(Tex. App.--El Paso 1991, pet. ref'd). (8)

 On appeal, appellant does not tell us what mistake of fact is involved which if based
on reasonable belief negates the kind of culpability required for the commission of the offense. In
his brief, appellant states "that he believed his license had never been suspended because he had
previously had several cases against him for driving with a suspended license dismissed on the
ground that there was inadequate notice of suspension." This is not a mistake of fact under the
statute. Morever, a defendant who relies upon another's mistake of law is not entitled to raise a
mistake of fact defense. Gallegos, 828 S.W.2d at 579; Austin, 769 S.W.2d at 372. Appellant's
simple denial of having acted "intentionally and knowingly" cannot be converted into a mistake of
fact. Appellant has simply failed to show that he was entitled to a jury instruction on a mistake of
fact defense. The two-pronged point of error VI is overruled.


Complaint and Information


 In point of error VII, appellant urges that the "complaint underlying the information
does not allege the facts required to support the information." Appellant does not point out what
essential facts are missing from the complaint nor does he direct our attention to any portion of the
record where be objected and secured an adverse ruling to preserve error. Tex. R. App. R. 38.1(h). 
He has not complied with the briefing rules.

 Apparently what appellant complains about is that originally the complaint and
information charged appellant with DWLS "under the provisions of the Texas Transportation
Code--Chapter 521.457"; that the information was later amended to charge the same offense "under
the provisions of article 6701h, §§ 13(a) and 14(a), Vernon's Texas Civil Statutes"; and that there
was a fatal variance between the two instruments after the amendment of the information approved
by the court. A close examination of the allegations reveals that the State was attempting to allege
the statute or statutes under which the driver's license had been suspended rather than the statute or
statutes defining the offense of DWLS with which appellant was charged. The record reflects that
the suspension of the license in question took place in 1993 before the 1995 enactment of the Texas
Transportation Code and that the instant offense occurred in 1998. In amending the information, the
State was obviously attempting to allege the appropriate statutes in effect in 1993.

 In Hess v. State, 953 S.W.2d 837, 840 (Tex. App.--Fort Worth 1997, pet. ref'd), the
court stated:


 Article 5, section 12(b) of the Texas Constitution provides in part that the
presentment of an indictment or information vests the court with jurisdiction of the
cause. An information may be properly amended. See Tex. Code Crim. Proc. Ann.
art 28.10 (Vernon 1989). However, the constitutional provision does not apply to
complaints, nor does article 28.10 or article 1.14(b). See Tex. Code Crim. Proc. Ann.
art. 1.14(b) (Vernon Supp. 1997); see also Huynh v. State, 901 480, S.W.2d 481
(Tex. Crim. App. 1995).


* * *



 Prosecutions based upon complaints and informations are governed by articles 15.04-.05 and similar statutes such as articles 21.20, 21.21 of the Texas Code of Criminal
Procedure. Id.; see also Tex. Code Crim. Proc. Ann. art. 15.04-.05 (Vernon 1977);
Tex. Code Crim. Proc. Ann. art. 21.20, 21.21 (Vernon 1989).


* * *



 A valid complaint is a prerequisite to a valid information. See Holland v. State, 623
S.W.2d 651, 652 (Tex. Crim. App. 1981); State v. Pierce, 816 S.W.2d 824, 827 (Tex.
App.--Austin 1991, no pet.). However when an original complaint and information
are proper, as here, the trial court has jurisdiction over the case, and a new complaint
is not required to amend an information. See Ho v. State, 856 S.W.2d 495, 498 (Tex.
App.--Houston [1st Dist.] 1993, no pet.); Dixon v. State, 737 S.W.2d 134, 135 (Tex.
App.--Fort Worth 1987, pet. ref'd); see also Driver v. State, 170 Tex. Crim. 130,
339 S.W.2d 208, 209 (1960) (op. on reh'g).



 "A charging instrument need not identify the charged offense by name. Nor need it
identify or refer to the statutory provision creating or defining the charged offense." 41 George E.
Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 20.103 (2d ed. 2001)
(hereafter Dix); see also Martin v. State, 13 S.W.2d 133, 140 (Tex. App.--Dallas 2000, pet. dism'd);
Sparkman v. State, 997 S.W.2d 660, 665 (Tex. App.--Texarkana 1999, pet. ref'd) (information for
violating provision of Transportation Code not subject to challenge because it failed to identify the
statutory provision involved).

 Since the original 1856 Code of Criminal Procedure, the code has prohibited the
presentment of an information until a sworn affidavit or complaint is made. 41 Dix, §19.11. This
requirement still appears in the current code. Tex. Code Crim. Proc. Ann. art. 21.22 (West 1989). 
The requirement is that the complaint be filed, but the information need not make any reference to
the complaint. Ashley v. State, 237 S.W.2d 311, 313 (Tex. Crim. App. 1951) (op on reh'g);
Sandoloski v. State, 143 S.W. 151, 155 (Tex. Crim. App. 1912) (op. on reh'g); Johnson v. State, 17
Tex. Ct. App. 230, 231 (1884).

 Traditionally, the absence of a complaint underlying an information was
jurisdictional. 41 Dix § 19.11; see also Wilson v. State, 10 S.W. 749, 750 (Tex. Ct. App. 1889). In
1985 Article V, section 12 of the Texas Constitution was amended to provide that the "filing" of an
information gives the trial court jurisdiction. "Defects in the underlying complaint do not deprive
what is otherwise an information of its nature as such an instrument, so the defects [in the complaint]
are no longer 'jurisdictional.'" 41 Dix, § 19.11 at 475; see also Aguilar v. State, 846 S.W.2d 318,
320 (Tex. Crim. App. 1993).

 Even if appellant had timely objected or moved to quash the information on the basis
of a variance with the complaint after the amendment of the information, see Tex. Code Crim. Proc.
Ann. art. 1.14(b) (West Supp. 2002), or id. art. 27.03(1) (West 1989); 41 Dix, § 19.61, the trial court
would not have erred in overruling the objection or motion.

 The trial court acquired jurisdiction over the DWLS offense with the original filing
of the complaint and information. It would have been better practice for the State to have filed a new
complaint and information in absence of a valid legal reason not to do so. Here, however, the
information was amended under article 28.10 of the Code of Criminal Procedure in order to correctly
state the statute under which the driver's license had been suspended because of an outstanding
liability judgment. This correction distinguished the basis of the suspension from other types of
DWLS cases. The complaint and information charged the same offense. The amendment to the
information made a correction to an allegation that was unnecessary. Moreover, the "substantial
agreements" between the two instruments here render the variance immaterial. Toliver v. State, 254
S.W.2d 388, 389 (Tex. Crim. App. 1953). Point of error VII is overruled.


Collateral Estoppel


 In point of error VIII, appellant advances the contention that the "trial court erred
because the issue of the validity of the notice letter had already been adjudicated in two signed orders
from Travis County." 

 Apparently, appellant is arguing that the trial court erred in refusing to grant a new
trial on the basis of collateral estoppel. Appellant contends that two prior DWLS cases against him
in cause numbers 456,101 and 456,269 in County Court at Law No. 3 of Travis County were
dismissed in part for "defective notice of suspension" as shown by his exhibits; that the instant case
should never have been tried; and that the trial court abused its discretion in failing to grant a new
trial. 


 "Collateral estoppel" is an awkward phrase, but it stands for an extremely important
principle in our adversary system of justice. It means simply that when an issue of
ultimate fact has once been determined by a valid and final judgment, that issue
cannot be litigated between the same parties in any future lawsuit.



Ashe v. Swenson, 397 U.S. 436, 445 (1970); see also Headrick v. State, 988 S.W.2d 226, 228 (Tex.
Crim. App. 1999). 

 Ashe holds that the rule of constitutional collateral estoppel is embodied in the Fifth
Amendment's guarantee against double jeopardy. 397 U.S. at 445. It is applicable to the states by
virtue of the due process clause of the Fourteenth Amendment. Id. at 442-43 (citing Benton v.
Maryland, 395 U.S. 784 (1969)).

 Ashe mandates only two inquiries in a criminal collateral estoppel claim as the instant
one: what facts were necessarily determined in the first lawsuit, and has the prosecution tried in a
subsequent lawsuit to relitigate the facts necessarily established against it in the first lawsuit? 
Dedrick v. State, 625 S.W.2d 332, 336 (Tex. Crim. App. 1981).

 The dismissals upon which appellant relies were actions taken to comply with the
statutory dismissal procedure. Article 32.02 provides:


 The attorney representing the State may, by permission of the court, dismiss a
criminal action at any time upon filing a written statement with the papers in the case
setting out his reasons for such dismissal which shall be incorporated in the judgment
of dismissal. No case shall be dismissed without the consent of the presiding judge.



Tex. Code Crim. Proc. Ann. art. 32.02 (West 1989).

 The exhibits offered by appellant were the informations, motions to dismiss, and
accompanying orders of dismissal in the said causes in County Court at Law No. 3 in Travis County
each styled State of Texas v. Stephen Kuhns. The informations charged appellant with the offense
of DWLS on January 6, 1996, and April 12, 1996, respectively. In cause number 456,269 one of the
reasons listed for dismissal was that appellant had been convicted of "speeding." In cause
number 456,101, one of the dismissal reasons listed was that appellant had been convicted of the
offense of "no insurance." A second reason found in each dismissal order was "defective service
of notice of suspension." 

 The evidence at the hearing on the motion for new trial in the instant case shows that
appellant's attorney (Drew Phipps) in the two causes had entered the second reason for dismissal in
each motion in his own handwriting before the motions for dismissal were signed by the prosecutor
and approved by the trial court.

 There is nothing in the record to show any evidence was offered in these two prior
cases or that any ultimate issue of fact was litigated or determined by court as required by Ashe, 397
U.S. at 445. No punishment was assessed in these earlier cases and no jeopardy resulted. The trial
court did not abuse its discretion in overruling the motion for new trial on the basis claimed. Point
of error VIII is overruled.


Alternative Argument


 In his last point of error, appellant requests that "[i]f the trial court finds against
Defendant on the grounds alleged above, it should grant a new trial under the alternative argument
that the defendant was provided with ineffective assistance of counsel." It appears that this
contention was lifted verbatim from the motion for new trial and placed in the appellate brief. It
requests relief from the trial court.

 Appellant generally argues that all previous contentions were the fault of his trial
counsel. More specifically, appellant complains that trial counsel did not use a subpoena to obtain
the envelope in which the letter or order of suspension may have been mailed on November 22,
1993, as the same counsel did while representing appellant in a subsequently tried case in Travis
County. Further, appellant contends that counsel "let" the "stamped letter" into evidence without
an objection that the letter (not envelope) was in violation by appellant's "Brady motion." In
addition, appellant urges that counsel should have discovered the "shifting" certifications of the
mailing of the letter giving notice of the license's suspension. The only cited authority is Strickland
v. Washington, 466 U.S. 668 (1984), without any effort to apply its two-pronged test to the instant
case.

 Strickland promulgated a test to determine whether representation was so inadequate
that it violated a defendant's right to counsel under the Sixth Amendment to the United States
Constitution. Id. at 687. First, trial counsel's performance must have fallen "below an objective
standard of reasonableness." Id. at 687-88. Second, the deficient performance must have prejudiced
the defense by "a reasonable probability that, but for counsel's errors, the result of the proceeding
would have been different." Id. at 689. The Strickland analysis has been adopted in Texas and
applies to constitutional claims under article one, section 10 of the Texas Constitution. Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).

 The burden of proving ineffective assistance of counsel is on the defendant by a
preponderance of the evidence. Jackson v. State, 877 S.W.2d 765, 771 (Tex. Crim. App. 1994). A
defendant must overcome a strong presumption that counsel's performance fell within the wide
range of reasonable professional assistance. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). To defeat this presumption, any allegation must be firmly founded in the record and the
record must affirmatively demonstrate the ineffectiveness. McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996). Moreover, the defendant must overcome the presumption that the
challenged conduct cannot be considered sound trial strategy. Tong v. State, 25 S.W.3d 707, 712
(Tex. Crim. App. 2000); Jackson, 877 S.W.2d at 771. Any error in trial strategy will be deemed
inadequate representation only if counsel's actions are without a plausible basis. Anderson v. State,
871 S.W.2d 900, 904 (Tex. App.--Houston [1st Dist.] 1994, no pet.).

 If the issue of ineffective assistance is raised on appeal, it has been repeatedly held
that without a sufficient record an appellant cannot overcome the presumption that counsel made all
significant decisions in the exercise of reasonable professional judgment. See Tong, 25 S.W.3d at
714 (holding that "without some explanation as to why counsel acted as he did, we presume that his
actions were the product of an overall strategic design"); see also Thompson, 9 S.W.3d at 814;
Jackson, 877 S.W.2d at 771. "[O]nly in rare cases will the record on direct appeal be sufficient for
an appellate court to fairly evaluate the claims." Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.
Crim. App. 2000). Appellant secured a hearing on his motion for new trial, but the record is
inadequate to evaluate appellant's broad and inadequately briefed claim or to overcome the
presumption. Appellant's point of error IX is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, Puryear and Onion*

Affirmed

Filed: March 28, 2002

Do Not Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   In making amendments on the face of the information after a motion to amend had been
granted, the term "Texas Transportation Code" remained in the information by oversight.
2.   The current code is cited for convenience.
3.   In response, the State notes that under chapter 601 of the Texas Transportation Code an
action of the DPS may be appealed unless an order of suspension by the department is based on an
existing unsatisfied final judgment rendered against a person by a court in this state arising out of
the use of a motor vehicle in this State. Tex. Transp. Code Ann. § 601.401(a)(1) (West Supp. 2002). 
The State points out that the suspension order was not entered by the DPS until notice of the
outstanding liability judgment against appellant growing out of an automobile accident was duly
received.
4.   The opinion on appeal from this conviction in Travis County (03-00-00818-CR) was
handed down this date.
5.   This envelope was introduced at the hearing on the motion for new trial when the entire
hearing on a new trial motion from a subsequently tried case in Travis County (cause number
561,885) was offered. Appellant contends that his trial counsel acquired the envelope subsequent
to trial.
6.   A post-trial order of the trial court allowed attorney Raleigh H. Van Trease to withdraw
and attorney Brian MacLeod to be substituted as counsel of record for appellant.
7.   "Reasonable belief" means a belief that would be held by an ordinary and prudent man in
the same circumstances as the actor. Tex. Pen. Code Ann. § 1.07(a)(43) (West 1994).
8.   Section 601.371(a) of the Transportation Code under which appellant was charged is silent
as to any culpable mental state required. Tex. Transp. Code Ann. § 601.371(a) (West 1999); see
generally Tex. Pen. Code Ann. § 6.02 (West 1994). The silence of a statute about whether a
culpable mental state is an element of the offense leaves a presumption that one is required. Aguirre
v. State, 22 S.W.3d 463, 472 (Tex. Crim. App. 1999); Thompson v. State, 44 S.W.3d 171, 177 (Tex.
App.--Houston [14th Dist.] 2001, no pet.) Here, the culpable mental states were alleged as
"intentionally and knowingly." For the purpose of this point of error, we need not determine the
culpable mental state or states applicable to section 601.371(a).