# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00063-CR

**Stephen Christopher Kuhns, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 52,918, HONORABLE LINDA RODRIGUEZ, JUDGE PRESIDING

Appellant Stephen Christopher Kuhns appeals his conviction for driving while license suspended (DWLS). Tex. Transp. Code Ann. § 601.371(a) (West 1999). The jury found appellant guilty of the offense charged. The trial court then assessed appellant's punishment at 152 days in the county jail and a fine of $500.

### Points of Error

Appellant advances ten points of error. Some of the points are unusually framed, but appellant apparently contends that he was denied the right of self-representation; that the State failed to provide evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963); and that the trial court erred in failing to submit the defenses of mistake of fact and of law to the jury, in failing to grant a new trial on the basis of newly discovered evidence, and in failing to bar the conviction on the basis of collateral estoppel. In addition, appellant claims that a DWLS conviction based on "actual notice"

violates due process of law, that the complaint was at variance with the information, and if none of the contentions have merit, he is entitled to a new trial on the basis that he was deprived of the constitutional right of the effective assistance of counsel. We will affirm the conviction.

**Information**

The amended information provides in pertinent part that on or about July 6, 1998 in Hays County appellant:

> did then and there intentionally and knowingly operate a motor vehicle upon a public highway during a period that the Texas driving privilege of the said Stephen Christopher Kuhns was suspended or revoked under the provisions of The Texas Transportation Code, Article 6701h, §§ 13(a), and 14(a), Vernon's Texas Civil Statutes.[1]

The prosecution was brought under chapter 601, Motor Vehicle Safety Responsibility Act, subchapter L., section 601.371, Tex. Transp. Code Ann. § 601.371 (West 1999). The offense charged occurred on July 6, 1998, after the enactment of the Transportation Code in 1985, but the suspension of the license occurred in 1993 when the civil statutes governed the procedure of suspension and notice. The record reflects that the suspension of appellant's driver's license was ordered as a result of an unsatisfied liability judgment against appellant arising out of an automobile accident, hence the particular DWLS prosecution under section 601.371.

One of the difficulties involved in dealing with the issues in this case is that section 601.371 was not cited or mentioned at trial nor were any of its provisions as to notice, defense, and

---

[1] In making amendments on the face of the information after a motion to amend had been granted, the term "Texas Transportation Code" remained in the information by oversight.

2

presumption utilized by the parties. Moreover, no reference is made on appeal to this particular section.

**Facts**

In order that appellant's contentions be placed in proper perspective, a review of the facts is necessary. On July 6, 1998, Deputy Bo Kidd of the Hays County Sheriff's Office observed appellant driving a motor vehicle on County Road 101. Deputy Kidd observed that appellant's vehicle had an expired inspection sticker and an expired motor vehicle registration. The officer stopped appellant. Kidd was familiar with appellant because he had stopped appellant for the same traffic violations on July 1, 1998. On that date, it was discovered appellant had no automobile liability insurance and that appellant's driver's license had been suspended. Appellant insisted that he was on his way to the Texas Department of Public Safety (DPS) to "clear up the problem" with the suspension of the license. Deputy Kidd permitted appellant to proceed on his way. Five days later, Kidd arrested appellant for the expired registration, expired inspection sticker, and for the failure to have liability insurance. At the jail, Kidd was able to confirm again that appellant's driver's license, number 06708052, had been suspended. Appellant was then arrested for DWLS.

The State offered evidence in the form of certified copies of the DPS record showing that appellant had been issued driver's license No. 06708052 on March 13, 1969, and that the license had been suspended on November 22, 1993. The State also showed that the basis of the suspension was an unsatisfied liability judgment in a justice of the peace court dated June 9, 1993, in the amount of $2,584.66 growing out of an 1991 automobile accident. Appellant had filed a pro se answer to the lawsuit giving his address as P. O. Box 242, Dripping Springs, Texas, which is the same address to which the DPS letter or order of suspension was mailed on November 22, 1993.

3

Appellant testified that he did not receive any letter or order of suspension at the Dripping Springs address; and that he did not drive his vehicle on July 6, 1998, in Hays County knowing that his driver's license was suspended. He related that he moved to Austin in 1991 but was still receiving mail at the Dripping Springs address in 1993, and that it was possible he was still receiving mail there in November 1993. He did not know when his post office box was closed because he could not "pay the bill." Appellant did not testify that before November 22, 1993, he had given the DPS notice of a change of address that he had moved from the Dripping Springs address as listed on his driver's license as required by law. *See* Tex. Transp. Code Ann. § 521.054 (West 1999).[2] Appellant related that at the time of trial, he lived at 3204 Western Drive in Austin, and that sometime in 1998 he had notified the DPS of his change of address to the office of his attorney, John Stayton, 919 Congress Avenue in Austin. When shown State's exhibit No. 1, a certified copy of a DPS record dated November 1, 1999, appellant agreed it showed his address as 4002 Duval Street, Austin.

Appellant related that his first arrest for DWLS was on Christmas Eve 1994, in Caldwell County. He introduced certified copies of complaints, informations, and dismissal motions. One set of documents from Washington County alleged a DWLS offense on or about May 10, 1995. Two sets of documents were from Travis County alleging offenses of DWLS on or about January 4, 1996, and on or about April 12, 1996. These documents show all three cases were dismissed. Appellant claimed the earliest one was also dismissed.

---

[2] The current code is cited for convenience.

The Washington County case document simply listed the reason for dismissal as "insufficient evidence." The two Travis County cases indicated dismissals because of a conviction in another case (speeding and "no insurance"). Each of the Travis county cases also listed as a second reason "defective service of notice of suspension."

Without giving dates, appellant testified that on several occasions he talked to DPS employees who told him that the suspension of his driver's license was invalid but that he would have to have an attorney call them to have the suspension removed from their computers. Appellant claimed that in 1999 he was stopped while driving in downtown Austin by a DPS officer; that he heard the officer's conversation with the dispatcher who reported appellant's license was suspended but "unresolved and indeterminate"; and that the officer let him go. Appellant testified that based on his conversation with attorneys, judges, and patrolmen, he did not believe the suspension was valid.

Appellant admitted that all he had now was an expired license and that he had never tried to renew it nor had he paid or settled the outstanding liability judgment against him. Appellant acknowledged that some time prior to July 6, 1998 (the date of the instant offense), he had talked to an assistant district attorney in Hays County about the reason behind the suspension of his driver's license. He denied, however, that the prosecutor had ever told him that the suspension would not be "lifted" until the liability judgment had been paid.

Shannon Fitzpatrick testified that she had served for one year as a prosecutor in Hays County. Prior to July 6, 1998, and while she was a prosecutor, Fitzpatrick encountered appellant in the courtroom, apparently concerning a DWLS matter. Although the conversations were not developed as well as they might have been, Fitzpatrick stated that appellant asked for a dismissal of a case because of a mix-up in paper work. She asked that the case be re-set, advised appellant to

5

obtain a lawyer, and agreed to check on his allegations. In that or a later conversation, Fitzpatrick told appellant there was an outstanding liability judgment underlying the suspension of his license which would have to be satisfied.

The trial court submitted the case to the jury tracking the amended information.

## Initial Contention

First, appellant argues that the "trial court erred because there was no evidence at trial affirmatively showing that the DPS never [sic] gave the statutory notice required for license suspension thereby eliminating any issue of fact as to whether the defendant could be charged with DWLS."

To preserve error, an accused must make a timely, specific motion or objection and secure an adverse ruling from the trial court. Tex. R. App. P. 33.1. If an accused fails to do so, he normally forfeits the right to complain on appeal about the action of the trial court. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Appellant does not direct our attention to any portion of the record concerning any action or ruling of the trial court which constitutes error on the part of the trial court preserved by a timely and specific objection. Tex. R. App. P. 38.1(h). The point of error is confusing as written. The trial court has no burden of going forward with the evidence or sustaining the burden of proof beyond a reasonable doubt. Tex. Pen. Code Ann. § 2.01 (West 1994). That is the function of the prosecution. *Id*.; *Vantil v. State*, 884 S.W.2d 212, 214 (Tex. App.—Fort Worth 1996, no pet.).

If it be appellant's contention that the evidence was insufficient, legally or factually, to sustain the conviction, he does not label it as such, cite authorities, or discuss the standards of

6

review. An appellate "brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Appellant's point of error presents nothing for review.

There is another reason for the same conclusion. Other contentions advanced rendered the point of error multifarious. Appellant claims a variance as to addresses in State's exhibits 1 and 2. These exhibits contained certified excerpts from appellant's DPS driver's license record. State's exhibit one reflects appellant's address as "4002 Duval Street, Austin, Tx 78751" and State's exhibit two reflects that the order or letter of suspension issued November 22, 1993, reflects the address of "P. O. Box 242, Dripping Springs, TX 78602." What appellant overlooks is that the exhibits were certified on November 1 and 2, 1999, showing what the record reflected on those dates, and does not constitute a variance as to appellant's address in 1993. Appellant also tries to blend into his contention evidence developed at the hearing on the motion for new trial and not before the trial court at trial.

Appellant further urges, without citation of authority, that "actual notice" of the suspension order is not permitted under the statutes. The multifarious point of error, inadequately briefed, presents nothing for review. Point of error I is overruled.

**Variance**

In point of error II, appellant urges that the "trial court erred because the notice of suspension evidence offered to support the conviction was insufficient as a matter of law."

In his argument, appellant appears to claim a variance between the wording of former article 6701h, section 13 of the Texas Revised Civil Statutes in effect in 1993, as to the certification

of the mailing of the notice or order of suspension, and the wording of the certificate of mailing stamped on the letter or order of suspension dated November 22, 1993, that was introduced into evidence. We do not find the variance to be substantial. If appellant objected on this basis to the introduction of the suspension letter, appellant has not directed our attention to any portion of the record where such objection was made. Tex. R. App. P. 38.1(h). Here again, appellant does not explain how his claim is trial court error. Appellant mentions that certified mail is one method for service of citation in civil cases. Tex. R. Civ. P. 106(A)(2). He does not show how that rule applies to the facts of the instant case. Appellant cites several civil cases and urges that the statutory language should be used "for a notice of license suspension."

Insofar as appellant's point of error gives the impression of a challenge to the sufficiency of the evidence, we observe that this matter is not briefed. It is not the task of an appellate court to speculate as to the nature of an appellant's legal claim or hunt and search through a voluminous record in an attempt to verify what may be appellant's claim. *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995). Further, we are not required to brief appellant's case for him. *Garcia v. State*, 887 S.W.2d 862, 882 (Tex. Crim. App. 1998). Point of error II is overruled.

**A Claim of Due Process**

In point of error III, appellant contends "[t]hat to allow the DPS to enforce its own notion of notice or to allow a conviction to stand based on 'actual notice' violates due process of law." The point of error is oddly worded and the argument is difficult to follow. No reference to the record is made. Appellant does not tell us how this "contention" was preserved for review nor does he claim that this matter may be raised for the first time on appeal. Even constitutional rights may

8

be waived.  *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  Appellant does not define what he means by "notion of notice" or "actual notice."

Appellant argues that a driver's license is a privilege but that it may not be taken away without procedural due process under the Fourteen Amendment to the United States Constitution and due course of law under article I, section 19 of the Texas Constitution.  Appellant asserts that due process required that "notice of the suspension in the manner required by the statute would allow a hearing that would offer a useful process in determing the fundamental fairness of the deprivation."  Appellant urges that he was entitled to an administrative hearing prior to trial.[3]  The argument is not "clear and concise" as required.  Tex. R. App. P. 38.1(h).  Moreover, the contention was not preserved for review.  Tex. R. App. P. 33.1(a).  Point of error III is overruled.

## Motion for New Trial

In point of error IV, appellant claims that the "trial court erred because it should have granted the defendant a new trial based on newly discovered evidence."  Appellant urges that the trial court abused its discretion in overruling the motion for new trial on the basis claimed.  That is the standard of review.  *See Rent v. State*, 982 S.W.2d 382, 384 (Tex. Crim. App. 1998); *Gonzales v. State*, 885 S.W.2d 692, 696 (Tex. Crim. App. 1983). An abuse of discretion occurs when the trial court's decision was arbitrary or such that it "was so clearly wrong as to lie outside that zone within

---

[3] In response, the State notes that under chapter 601 of the Texas Transportation Code an action of the DPS may be appealed *unless* an order of suspension by the department is based on an existing unsatisfied final judgment rendered against a person by a court in this state arising out of the use of a motor vehicle in this State.  Tex. Transp. Code Ann. § 601.401(a)(1) (West Supp. 2002). The State points out that the suspension order was not entered by the DPS until notice of the outstanding liability judgment against appellant growing out of an automobile accident was duly received.

which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

Article 40.001 provides: "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2002). This statute, enacted in 1993, withdrew from the Court of Criminal Appeals its rule-making authority with respect to rules of appellate procedure relating to granting a new trial on grounds of evidence other than material evidence discovered after the trial of an offense. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 11.01, 1993 Tex. Gen. Laws 3586, 3765, eff. Sept. 1, 1993; *see* 43A George E. Dix & Robert O. Dawson, Texas Practice: *Criminal Practice and Procedure*, § 41.41 (2d ed. 2001). As a result, former rule 30(b)(6) was deleted. *See* Tex. R. App. P. 21 (notes and comments) (West 2001). Article 40.001 returns the law to its pre-rule status. *Ashcraft v. State*, 918 S.W.2d 648, 652-55 (Tex. App.—Waco 1996, pet. ref'd).

In 1985, before the adoption of the Rules of Appellate Procedure, the Court of Criminal Appeals set forth the following formulation:

> The overruling of a motion for new trial based upon newly discovered evidence will not constitute an abuse of discretion unless the record shows (1) the evidence was unknown to the movant before trial; (2) that the defendant's failure to discover it was not due to want of diligence on his part; (3) that its materiality was such as would probably bring about a different result on another trial; and (4) that it was competent, not merely cumulative, corroborative, collateral or impeaching. *Van Byrd. v. State*, 605 S.W.2d 265 (Tex. Cr. App. 1980); *Hernandez v. State*, 507 S.W.2d 209 (Tex. Cr. App. 1974). To be material the new evidence must be shown to be probably true and of such weight as to probably produce a different result at another trial. *Van Byrd*, supra; *Eddlemon v. State*, 591 S.W.2d 847 (Tex. Cr. App. 1980). The trial judge determines whether the new evidence is probably true.

*Boyett v. State*, 692 S.W.2d 512, 516-17 (Tex. Crim. App. 1985).

10

At the hearing on the motion for new trial in the instant case, appellant introduced the record of the new trial hearing in cause number 561,885 wherein appellant was convicted of DWLS in a subsequent trial in County Court at Law No. 3 in Travis County.[4]

Appellant cites no authority on appeal dealing with motions for new trial much less any authority where the motion was based on newly discovered evidence which is the basis for his point of error. Appellant raises general matters which he contends entitle him to a new trial. At trial, the State introduced a letter or order of suspension of appellant's driver's license dated November 22, 1993, with a certificate of service (mailing) stamped thereon. At the new trial hearing, appellant testified that in the prior cases of DWLS which had been dismissed, there was no stamp showing a certificate of mailing on the DPS letter; and that Drew Phipps, his attorney, in two of the prior cases, testified that he saw no certificate of mailing on the letter when he represented appellant. Appellant does not demonstrate how this was newly discovered evidence. Appellant urges that the certificate showing service by mailing on the letter in the instant case was stamped on the front of the letter and signed by a Joyce Stevens, while in the Travis County case (cause number 561,885) the certificate of service on the suspension letter was stamped on the back and signed by Linda Beline.

Appellant calls attention to the affidavits of Kathleen Wilkerson and Jill Bosch that after the instant trial they saw the suspension letter at the DPS office without a stamp, but when they obtained a certified copy of the letter from DPS the certificate of service (mailing) was stamped

_____

[4] The opinion on appeal from this conviction in Travis County (03-00-00818-CR) was handed down this date.

thereon. Appellant refers to this matter as a "stamping morass," a "stamping subterfuge" and a "three card monty" process. None of the foregoing contentions meet the requirements of *Boyett*.

Next, appellant contends that the exhibits offered at the new trial hearing show that he was granted "a restricted license," that the papers in connection therewith gave his address as "4002 Duval Street, Austin," and the DPS was made aware of this address in April or May 1993 prior to the letter of suspension being mailed to him at P. O. Box 242, Dripping Springs in November 1993. An examination of the records introduced by appellant show that on April 15, 1993, appellant obtained an order from a district court granting him an occupational license following a conviction for driving while intoxicated and a separate suspension of his driver's license. While the Duval Street address was involved in the issuance of the occupational license, the record does not show, and appellant does not claim, that he gave an official notice of a change of address from the Drippings Springs address on his driver's license as required by law. Under any circumstances, this matter was not unknown to appellant nor was he unaware of it so that it would constitute newly discovered evidence entitling him to a new trial.

Appellant simply has not shown he is entitled to a new trial based on newly discovered evidence. Motions for a new trial based on claims of newly discovered evidence traditionally lack favor with courts and are viewed with cautious scrutiny. *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987). The trial court did not abuse its discretion in overruling the new trial motion as claimed by appellant. *Molinar v. State*, 910 S.W.2d 572, 583 (Tex. App.—El Paso 1995, no pet.). Point of error IV is overruled.

**A Brady Violation Claimed**

12

In point of error V, appellant contends that the "judgment of the trial court should be reversed because the failure of the State to provide the returned envelope is a reversible *Brady* violation."

The trial court granted a general *Brady v. Maryland*, 373 U.S. 83, 87 (1963) pretrial motion. The motion made no specific mention of a "returned envelope." The point of error and the argument offered does not identify the envelope. There are numerous letters and several envelopes in this voluminous record consisting of two trials. We shall assume that appellant is referring to an envelope post-marked November 22, 1993, addressed to appellant at Post Office Box 242, Dripping Springs, Texas, the address on his driver's license. This envelope was marked, "Return to sender—forwarding address expired."[5] While the order of the license suspension was dated November 22, 1993, there was no showing that the order was mailed in this particular envelope or that the only correspondence with appellant on November 22, 1993, by the DPS was the suspension order.

When the prosecution suppresses evidence favorable to the accused, due process is violated when the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). *Brady* material includes both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). Evidence suppressed by the prosecutor is "material" if there is "a reasonable probability that had the

_____

[5] This envelope was introduced at the hearing on the motion for new trial when the entire hearing on a new trial motion from a subsequently tried case in Travis County (cause number 561,885) was offered. Appellant contends that his trial counsel acquired the envelope subsequent to trial.

evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *Wyatt*, 23 S.W.2d at 18. A "reasonable probability" is a "probability to undermine confidence in the outcome." *Wyatt*, 23 S.W.3d at 27.

To prevail on his *Brady* claim, appellant must show that (1) the prosecution suppressed or withheld evidence; (2) the suppressed evidence would have been favorable to the accused; and (3) the evidence was material to the accused's defense. *Thomas*, 841 S.W.2d at 404.

In evaluating a *Brady* claim, we must determine whether the favorable evidence was withheld by the State or its agents. *Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969). The duty of disclosure exists only if the State has control over, access to, or at least knowledge of the evidence. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990). The prosecutor's office "is an entity" for due process purposes. *See Giglio v. United States*, 405 U.S. 150, 154. Moreover, the Court of Criminal Appeals has focused upon "the prosecution team," which includes both prosecutorial and investigative agencies, at least where those are part of the same government. *Ex parte Brandley*, 781 S.W.2d 886, 892 n.7 (Tex. Crim. App. 1989); *see also Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993). But not all governmental agencies are necessarily part of "the prosecution team." *Shanks v. State*, 13 S.W.3d 83, 86 (Tex. App.—Texarkana 2000, no pet.) (Department of Criminal Justice was not part of prosecution team). In *Wyatt*, 23 S.W.3d at 27, the information in the file of an investigator for the pathologist's office was held not in the possession of the State for *Brady* purposes. In any case, the accused must show that the exculpatory evidence was in the possession of a person who is part of the prosecuting team. *Id.* There is no general public records exception to the *Brady* rule. *Dalbosco v. State*, 978 S.W.2d 236, 238 (Tex. App.—Texarkana 1998, pet. ref'd). "Documents, however, that are a part of public

records are not deemed suppressed by the prosecution if defense counsel should know of them and fails to obtain the records because of a lack of diligence in his own investigation . . . ." *Id.* The necessary inquiry is whether the defendant knew or should have known facts that would have allowed him to access the undisclosed evidence. *Id.*

In the instant case, the Hays County prosecutor did not have possession of the envelope in question and nothing reflects that the prosecution knew of the envelope. The document was in the possession of the custodian of the records of the DPS, and it is not shown that the DPS did any investigative chores so as to constitute that agency part of the prosecution team. Appellant's counsel obtained the envelope after trial when he issued a subpoena duces tecum in another DWLS case against appellant in Travis County and by agreement received appellant's entire driving record. In light of the extensive prior litigation of his DWLS cases, appellant should have known that if there was any favorable and material evidence, it might well be contained in his driving record with the DPS which was available to him. We do not conclude that the granting of the general *Brady* motion here required the prosecutor to search the records of the DPS or other governmental agencies to find evidence that might be favorable and material to an accused's case to prevent being labeled a suppressor. In view of the record and all of the evidence appellant offered at the new trial hearing, we conclude that there is no reasonable probability that had the complained-of evidence been disclosed to the appellant, the outcome of the proceeding would have been different. Point of error V is overruled.

**Self-Representation**

In point of error V-a, appellant contends that the "trial court erred because it did not allow the Defendant to proceed *pro se* in violation of the Texas and United States Constitution."

Putting aside the extraneous and immaterial matters advanced in appellant's argument, we observe that a defendant in a criminal trial has the constitutional right to counsel under the Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas Constitution. *Faretta v. California*, 422 U.S. 806, 819-20 (1975); *Fulbright v. State*, 40 S.W.3d 228, 238 (Tex. App.—Fort Worth 2001, pet. ref'd). The right to counsel may be waived and a defendant may then constitutionally choose to represent himself at trial. *Faretta*, 422 U.S. at 819-20; *Fulbright*, 41 S.W.3d at 238. The right to waive counsel and proceed *pro se* is made knowingly and intelligently if it is made with a full understanding of the right to counsel which is being abandoned as well as the dangers and disadvantages of self-representation. *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997).

The picture painted by this record lacks clarity as to all the defense counsel who graced the stage at the scene of this trial and its earlier proceedings. With the exception of a post-trial order,[6] we have not found in the record orders of appointment or withdrawal of counsel. The State tells us attorney Michael Schulman was appointed to represent appellant in a companion case (cause number 52,228 in Hays County), but that he withdrew and attorney Larry Rasco was appointed in the companion cause to represent appellant and as "standby counsel" in the instant cause (number 52,918). Rasco apparently withdrew and attorney Kyle Maysel was appointed in both causes. At a pretrial hearing on November 29, 1999, the trial court allowed attorney Maysel to withdraw and

---

[6] A post-trial order of the trial court allowed attorney Raleigh H. Van Trease to withdraw and attorney Brian MacLeod to be substituted as counsel of record for appellant.

16

pointed out to appellant that he had had three attorneys at county expense. At this point appellant asserted his right to self-representation in the instant cause, if he had not done so before. The trial court permitted appellant to proceed *pro se* and reset the case for trial. When the trial court continued to mention the disadvantages of self-representation, appellant agreed. He stated:

> I don't have the trial experience. I would like to have an attorney if it's going to trial. I think it's absolutely necessary. I don't believe that I can adequately represent myself at a trial under the conditions that I'm looking at.

Attorney Polk Shelton was then appointed to represent appellant and he did so at a pretrial hearing and at trial. On October 23, 2000, prior to voir dire examination of the jury panel, appellant raised a question about self-representation. The trial court informed appellant that Shelton had been appointed in both of appellant's cases. Later, appellant stated *pro se* that he was being deprived of the right of self-representation, that he was to be the attorney and his attorney was to be stand-by counsel. The trial court "noted" the objection and the trial proceeded.

An accused's constitutional rights to represent himself cannot be manipulated in such manner as to throw the process into disarray. *Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991); *Hubbard v. State*, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987); *Fulbright*, 41 S.W.3d at 235. Throughout the proceedings, appellant exercised his right to counsel, to appointed counsel, and asserted his right to self-representation with or without standby-counsel. Two or three counsel were appointed and allowed to withdraw because of appellant's or counsel's dissatisfaction or to allow self-representation. In the process, the trial was delayed again and again. Once appellant obtained his right to represent himself in this case, he changed his mind and another counsel was appointed. The trial court did not err in refusing to allow appellant to continue to manipulate the process.

17

Moreover, an accused has no absolute right to hybrid representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1980). A trial court may, in its discretion, permit both counsel and accused to jointly participate in the case. *Webb v. State*, 533 S.W.2d 780, 784 n.2 (Tex. Crim. App. 1976). With one exception, the trial court liberally allowed hybrid representation throughout the instant trial. Point of error V-a is overruled.

**Jury Instructions**

In point of error VI, appellant urges that the "trial court erred because it failed to offer *a* jury instruction allowing it to find mistake of law *or* mistake of fact when the evidence properly raised the *defense*." (Emphasis added.) The point is multifarious despite the wording. Two separate and distinct defenses are involved.

Despite the multifarious nature of the point of error, we shall separate the contentions for the purpose of discussion. A defendant is entitled to an instruction on every defense raised by the evidence. *White v. State*, 844 S.W.2d 929, 933 (Tex. Crim. App. 1992). The defendant has the burden of producing sufficient evidence to raise a defensive issue. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994). The instruction is not required if the evidence viewed in the light most favorable to the defendant does not raise the issue. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

Without citing or applying the statutory defenses involved, appellant calls attention to his own testimony that he did not believe that his driver's license was properly suspended and that

the DPS would not remove the suspension from its record. Appellant then sets out the following

from his direct examination:

Q: And as far as you know your license is not suspended or it's got some problem with being suspended.

A: That is correct.

Q: Have you intentionally or knowingly operated a motor vehicle on a public highway in Texas during a time when you knew that your license was suspended or revoked under the provisions of 6071h, 13 or 14 of the Vernon's Civil Statute?

Have you?

A: I'm sorry, No.

Q: Have you operated a motor vehicle when your license, knowing your license was suspended?

A: No.

Appellant tells us that "[t]his testimony gave rise to the *issue* of mistake of fact and

mistake of law." (Emphasis added.)

**Mistake of Law**

Section 8.03 of the Penal Code provides in pertinent part:

(a) It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect.

(b) It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

19

(1)  an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2)  a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

Tex. Pen. Code Ann. § 8.03 (West 1994).

A party making objections to the court's charge to the jury must "distinctly" specify each ground of objection. Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2002). Appellant objected to the court's charge "for the reason that it fails to contain a charge on mistake of fact which is raised by the evidence. Secondly, and supplemental thereto, we object to the court's charge in that it fails to allege a mistake of law which is raised by the evidence." The objections were overruled. The objections were general and did not comply with article 36.14. Appellant did not tell the trial court what evidence raised the issue, what evidence caused appellant to "reasonably believe"[7] that the conduct charged did not constitute a crime. Further, appellant in his objection did not point out to the trial court what written official statement of the law or written interpretation of the laws contained in an opinion or made by a public official as defined in section 8.03(b) upon which he "acted in reasonable reliance." *Id*. No documents so defined are in evidence. In his appellate argument, appellant does not mention such documents, if any. In order to be entitled to a mistake of law defense instruction, a defendant must meet the requirements of section 8.03(b). *Green v. State*, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992). We do not find that "the specific grounds were

---

[7]  "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. Tex. Pen. Code Ann. § 1.07(a)(43) (West 1994).

20

apparent from the context." Tex. R. App. 33.1(a)(1)(A). Appellant's objection was too general to preserve error. *Williams v. State*, 930 S.W.2d 898, 903 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Pennington v. State*, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985)).

Appellant did testify that the prior DWLS cases against him had been dismissed. These dismissals do not qualify as acceptable documents under section 8.03(b)(1), (2). Perhaps for this reason, appellant did not rely upon these dismissals under this point of error.

Appellant also testified that DPS employees told him the suspension of his driver's license was invalid but an attorney would have to contact DPS about a removal of the suspension. Incorrect legal advice is not sufficient to establish either a mistake of law or a mistake of fact. *Barrera v. State*, 978 S.W.2d 665, 671 (Tex. App.—Corpus Christi 1998, pet. ref'd); *Gallegos v. State*, 828 S.W.2d 577, 579 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *Austin v. State*, 769 S.W.2d 369, 372 (Tex. App.—Beaumont 1989, pet. ref'd); *Linder v. State*, 734 S.W.2d 168, 171 (Tex. App.—Waco 1987, pet. ref'd) (pre-offense advice from district attorney).

Under the circumstances, no error is presented by the trial court's refusal to include a mistake of law defense instruction in the court's charge.

**Mistake of Fact**

Section 8.02(a) provides:

21

> It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense.

Tex. Pen. Code Ann. § 8.02(a). Mistake of fact constitutes a defense to criminal responsibility to the extent it negates the necessary mens rea of the offense. *Id.* The defense requires a reasonable belief on the part of the defendant. *Id.* The trial court must give the instruction upon proper objection or request if the evidence raises the issue. *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990). Thus, the objection must be proper and the issue must be raised by evidence.

Appellant's general objection to the court's charge is set out above. It clearly does not distinctly specify the grounds or basis for the objection or what mistake of fact is involved as required by statute. Tex. Code Crim. Proc. art. 36.14 (West Supp. 2002). The trial court should not be "sandbagged." *Pennington*, 697 S.W.2d at 390. The objection was not proper. *Id.*

Was the issue of mistake of fact even raised by the evidence? The evidence does not raise the issue unless the defendant, through mistake, formed a reasonable belief about a matter of fact. *King v. State*, 919 S.W.2d 819, 821 (Tex. App.—El Paso 1996, no pet.). The mistaken belief must negate the kind of culpability required for the commission of the offense. *Id.*; *Thomas v. State*, 855 S.W.2d 212, 214 (Tex. App.—Corpus Christi, 1993, no pet.). "Kind of culpability" refers to the culpable mental state or states required in the offense with which the accused is charged. *See Brumley v. State*, 804 S.W.2d 659, 662 (Tex. App.—Amarillo 1991, no pet.); *see also Miller v.*

22

*State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); *Egger v. State*, 817 S.W.2d 183, 187 (Tex. App.—El Paso 1991, pet. ref'd).[8]

On appeal, appellant does not tell us what mistake of *fact* is involved which if based on reasonable belief negates the kind of culpability required for the commission of the offense. In his brief, appellant states "that he believed his license had never been suspended because he had previously had several cases against him for driving with a suspended license dismissed on the ground that there was inadequate notice of suspension." This is not a mistake of fact under the statute. Morever, a defendant who relies upon another's mistake of law is not entitled to raise a mistake of fact defense. *Gallegos*, 828 S.W.2d at 579; *Austin*, 769 S.W.2d at 372. Appellant's simple denial of having acted "intentionally and knowingly" cannot be converted into a mistake of fact. Appellant has simply failed to show that he was entitled to a jury instruction on a mistake of fact defense. The two-pronged point of error VI is overruled.

### Complaint and Information

In point of error VII, appellant urges that the "complaint underlying the information does not allege the facts required to support the information." Appellant does not point out what essential facts are missing from the complaint nor does he direct our attention to any portion of the

---

[8] Section 601.371(a) of the Transportation Code under which appellant was charged is silent as to any culpable mental state required. Tex. Transp. Code Ann. § 601.371(a) (West 1999); *see generally* Tex. Pen. Code Ann. § 6.02 (West 1994). The silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is required. *Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim. App. 1999); *Thompson v. State*, 44 S.W.3d 171, 177 (Tex. App.—Houston [14th Dist.] 2001, no pet.) Here, the culpable mental states were alleged as "intentionally and knowingly." For the purpose of this point of error, we need not determine the culpable mental state or states applicable to section 601.371(a).

record where be objected and secured an adverse ruling to preserve error. Tex. R. App. R. 38.1(h). He has not complied with the briefing rules.

Apparently what appellant complains about is that originally the complaint and information charged appellant with DWLS "under the provisions of the Texas Transportation Code—Chapter 521.457"; that the information was later amended to charge the same offense "under the provisions of article 6701h, §§ 13(a) and 14(a), Vernon's Texas Civil Statutes"; and that there was a fatal variance between the two instruments after the amendment of the information approved by the court. A close examination of the allegations reveals that the State was attempting to allege the statute or statutes under which the driver's license had been suspended rather than the statute or statutes defining the offense of DWLS with which appellant was charged. The record reflects that the suspension of the license in question took place in 1993 before the 1995 enactment of the Texas Transportation Code and that the instant offense occurred in 1998. In amending the information, the State was obviously attempting to allege the appropriate statutes in effect in 1993.

In *Hess v. State*, 953 S.W.2d 837, 840 (Tex. App.—Fort Worth 1997, pet. ref'd), the court stated:

> Article 5, section 12(b) of the Texas Constitution provides in part that the presentment of an indictment or information vests the court with jurisdiction of the cause. An information may be properly amended. *See* Tex. Code Crim. Proc. Ann. art 28.10 (Vernon 1989). However, the constitutional provision does not apply to complaints, nor does article 28.10 or article 1.14(b). *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp. 1997); *see also Huynh v. State*, 901 480, S.W.2d 481 (Tex. Crim. App. 1995).

\* \* \*

24

Prosecutions based upon complaints and informations are governed by articles 15.04-.05 and similar statutes such as articles 21.20, 21.21 of the Texas Code of Criminal Procedure. *Id*.; *see also* Tex. Code Crim. Proc. Ann. art. 15.04-.05 (Vernon 1977); Tex. Code Crim. Proc. Ann. art. 21.20, 21.21 (Vernon 1989).

\* \* \*

A valid complaint is a prerequisite to a valid information. *See Holland v. State*, 623 S.W.2d 651, 652 (Tex. Crim. App. 1981); *State v. Pierce*, 816 S.W.2d 824, 827 (Tex. App.—Austin 1991, no pet.). However when an original complaint and information are proper, as here, the trial court has jurisdiction over the case, and a new complaint is not required to amend an information. *See Ho v. State*, 856 S.W.2d 495, 498 (Tex. App.—Houston [1st Dist.] 1993, no pet.); *Dixon v. State,* 737 S.W.2d 134, 135 (Tex. App.—Fort Worth 1987, pet. ref'd); *see also Driver v. State*, 170 Tex. Crim. 130, 339 S.W.2d 208, 209 (1960) (op. on reh'g).

"A charging instrument need not identify the charged offense by name. Nor need it identify or refer to the statutory provision creating or defining the charged offense." 41 George E. Dix & Robert O. Dawson, Texas Practice: *Criminal Practice and Procedure* § 20.103 (2d ed. 2001) (hereafter *Dix*); *see also Martin v. State*, 13 S.W.2d 133, 140 (Tex. App.—Dallas 2000, pet. dism'd); *Sparkman v. State*, 997 S.W.2d 660, 665 (Tex. App.—Texarkana 1999, pet. ref'd) (information for violating provision of Transportation Code not subject to challenge because it failed to identify the statutory provision involved).

Since the original 1856 Code of Criminal Procedure, the code has prohibited the presentment of an information until a sworn affidavit or complaint is made. 41 *Dix*, §19.11. This requirement still appears in the current code. Tex. Code Crim. Proc. Ann. art. 21.22 (West 1989). The requirement is that the complaint be filed, but the information need not make any reference to the complaint. *Ashley v. State*, 237 S.W.2d 311, 313 (Tex. Crim. App. 1951) (op on reh'g);

25

*Sandoloski v. State*, 143 S.W. 151, 155 (Tex. Crim. App. 1912) (op. on reh'g); *Johnson v. State*, 17 Tex. Ct. App. 230, 231 (1884).

Traditionally, the absence of a complaint underlying an information was jurisdictional. 41 *Dix* § 19.11; *see also Wilson v. State*, 10 S.W. 749, 750 (Tex. Ct. App. 1889). In 1985 Article V, section 12 of the Texas Constitution was amended to provide that the "filing" of an information gives the trial court jurisdiction. "Defects in the underlying complaint do not deprive what is otherwise an information of its nature as such an instrument, so the defects [in the complaint] are no longer 'jurisdictional.'" 41 *Dix*, § 19.11 at 475; *see also Aguilar v. State*, 846 S.W.2d 318, 320 (Tex. Crim. App. 1993).

Even if appellant had timely objected or moved to quash the information on the basis of a variance with the complaint after the amendment of the information, *see* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 2002), or *id*. art. 27.03(1) (West 1989); 41 *Dix*, § 19.61, the trial court would not have erred in overruling the objection or motion.

The trial court acquired jurisdiction over the DWLS offense with the original filing of the complaint and information. It would have been better practice for the State to have filed a new complaint and information in absence of a valid legal reason not to do so. Here, however, the information was amended under article 28.10 of the Code of Criminal Procedure in order to correctly state the statute under which the driver's license had been suspended because of an outstanding liability judgment. This correction distinguished the basis of the suspension from other types of DWLS cases. The complaint and information charged the same offense. The amendment to the information made a correction to an allegation that was unnecessary. Moreover, the "substantial

agreements" between the two instruments here render the variance immaterial. *Toliver v. State,* 254 S.W.2d 388, 389 (Tex. Crim. App. 1953). Point of error VII is overruled.

## Collateral Estoppel

In point of error VIII, appellant advances the contention that the "trial court erred because the issue of the validity of the notice letter had already been adjudicated in two signed orders from Travis County."

Apparently, appellant is arguing that the trial court erred in refusing to grant a new trial on the basis of collateral estoppel. Appellant contends that two prior DWLS cases against him in cause numbers 456,101 and 456,269 in County Court at Law No. 3 of Travis County were dismissed in part for "defective notice of suspension" as shown by his exhibits; that the instant case should never have been tried; and that the trial court abused its discretion in failing to grant a new trial.

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson*, 397 U.S. 436, 445 (1970); *see also Headrick v. State*, 988 S.W.2d 226, 228 (Tex. Crim. App. 1999).

*Ashe* holds that the rule of constitutional collateral estoppel is embodied in the Fifth Amendment's guarantee against double jeopardy. 397 U.S. at 445. It is applicable to the states by virtue of the due process clause of the Fourteenth Amendment. *Id*. at 442-43 (citing *Benton v. Maryland*, 395 U.S. 784 (1969)).

27

*Ashe* mandates only two inquiries in a criminal collateral estoppel claim as the instant one: what facts were necessarily determined in the first lawsuit, and has the prosecution tried in a subsequent lawsuit to relitigate the facts necessarily established against it in the first lawsuit? *Dedrick v. State*, 625 S.W.2d 332, 336 (Tex. Crim. App. 1981).

The dismissals upon which appellant relies were actions taken to comply with the statutory dismissal procedure. Article 32.02 provides:

> The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge.

Tex. Code Crim. Proc. Ann. art. 32.02 (West 1989).

The exhibits offered by appellant were the informations, motions to dismiss, and accompanying orders of dismissal in the said causes in County Court at Law No. 3 in Travis County each styled *State of Texas v. Stephen Kuhns*. The informations charged appellant with the offense of DWLS on January 6, 1996, and April 12, 1996, respectively. In cause number 456,269 one of the reasons listed for dismissal was that appellant had been convicted of "speeding." In cause number 456,101, one of the dismissal reasons listed was that appellant had been convicted of the offense of "no insurance." A second reason found in each dismissal order was "defective service of notice of suspension."

The evidence at the hearing on the motion for new trial in the instant case shows that appellant's attorney (Drew Phipps) in the two causes had entered the second reason for dismissal in

28

each motion in his own handwriting before the motions for dismissal were signed by the prosecutor and approved by the trial court.

There is nothing in the record to show any evidence was offered in these two prior cases or that any ultimate issue of fact was litigated or determined by court as required by *Ashe*, 397 U.S. at 445. No punishment was assessed in these earlier cases and no jeopardy resulted. The trial court did not abuse its discretion in overruling the motion for new trial on the basis claimed. Point of error VIII is overruled.

### Alternative Argument

In his last point of error, appellant requests that "[i]f the trial court finds against Defendant on the grounds alleged above, it should grant a new trial under the alternative argument that the defendant was provided with ineffective assistance of counsel." It appears that this contention was lifted verbatim from the motion for new trial and placed in the appellate brief. It requests relief from the trial court.

Appellant generally argues that all previous contentions were the fault of his trial counsel. More specifically, appellant complains that trial counsel did not use a subpoena to obtain the envelope in which the letter or order of suspension may have been mailed on November 22, 1993, as the same counsel did while representing appellant in a subsequently tried case in Travis County. Further, appellant contends that counsel "let" the "stamped letter" into evidence without an objection that the letter (not envelope) was in violation by appellant's "*Brady* motion." In addition, appellant urges that counsel should have discovered the "shifting" certifications of the mailing of the letter

29

giving notice of the license's suspension. The only cited authority is *Strickland v. Washington,* 466 U.S. 668 (1984), without any effort to apply its two-pronged test to the instant case.

*Strickland* promulgated a test to determine whether representation was so inadequate that it violated a defendant's right to counsel under the Sixth Amendment to the United States Constitution. Id. at 687. First, trial counsel's performance must have fallen "below an objective standard of reasonableness." *Id*. at 687-88. Second, the deficient performance must have prejudiced the defense by "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. at 689. The *Strickland* analysis has been adopted in Texas and applies to constitutional claims under article one, section 10 of the Texas Constitution. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).

The burden of proving ineffective assistance of counsel is on the defendant by a preponderance of the evidence. *Jackson v. State*, 877 S.W.2d 765, 771 (Tex. Crim. App. 1994). A defendant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To defeat this presumption, any allegation must be firmly founded in the record and the record must affirmatively demonstrate the ineffectiveness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Moreover, the defendant must overcome the presumption that the challenged conduct cannot be considered sound trial strategy. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *Jackson*, 877 S.W.2d at 771. Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without a plausible basis. *Anderson v. State*, 871 S.W.2d 900, 904 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

30

If the issue of ineffective assistance is raised on appeal, it has been repeatedly held that without a sufficient record an appellant cannot overcome the presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. *See Tong*, 25 S.W.3d at 714 (holding that "without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic design"); *see also Thompson*, 9 S.W.3d at 814; *Jackson*, 877 S.W.2d at 771. "[O]nly in rare cases will the record on direct appeal be sufficient for an appellate court to fairly evaluate the claims." *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). Appellant secured a hearing on his motion for new trial, but the record is inadequate to evaluate appellant's broad and inadequately briefed claim or to overcome the presumption. Appellant's point of error IX is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

_____

Before Justices Kidd, Puryear and Onion[*]

Affirmed

Filed: March 28, 2002

Do Not Publish