COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




KATHRYN FORKERT


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00224-CR



Appeal from the


41st Judicial District Court


of El Paso County, Texas 


(TC# 2002OD03174) 



O P I N I O N


 Kathryn Forkert appeals her conviction on three counts of tampering with governmental
records and three counts of securing execution of document by deception, violations of Sections
37.10 and 32.46, respectively, of the Texas Penal Code. On June 25, 2002, Appellant was
indicted on five counts of tampering with government records and five counts of securing
execution of document by deception. A jury found her guilty of tampering with governmental
records (Counts III, V, and VII) and securing execution of document by deception (Counts IV,
VI, and VIII). (1) The trial court assessed her punishment at 2 years' State Jail, probated for 5
years' community supervision on Counts III, V, and VII, 1 year in the El Paso County Detention
Facility, probated for 2 years' community supervision on Counts IV and VI, and 2 years' State
Jail, probated for 5 years' community supervision on Count VIII. She was also ordered to pay
full restitution in the amount of $6,450 to the Texas Department of Human Services (DHS). We
affirm.

 In nine issues, Appellant complains that the trial court erred in allowing the State to
introduce summaries of evidence without producing the backup material in compliance with
Tex.R.Evid. 1006, that the evidence was insufficient to support her convictions, that the trial
court erred in not submitting a "mistake of fact" instruction to the jury, and that the trial court
erred in denying Appellant's motion for a directed verdict.

 This is a welfare fraud case. On June 13, 2000, August 7, 2000, October 6, 2000,
January 22, 2001, and August 9, 2001, Appellant applied for Medicaid and food stamps. All of
these applications were approved and she received a total of $6,450 in benefits.

 To qualify for Medicaid and food stamps, an applicant can have no more than $2,000 in
resources per household. After an applicant submits their paperwork, a DHS caseworker reviews
it and conducts a follow-up interview with the applicant to verify the information submitted. At
this interview, the caseworker enters the applicant's information into DHS' database for
processing.

 In October of 2001, Appellant's case was referred to Sal Olivarez, an investigator with
the DHS Office of Inspector General. (2) Olivarez investigated her file and discovered the
existence of a bank account at the El Paso Area Teachers Federal Credit Union (EPTFCU) in the
names of Steve Forkert and Roswitha Short. Steve Forkert, Appellant's husband, opened this
account in 1984 and added his mother, Roswitha Short, in July of 1999. When added to the
account, Roswitha deposited approximately $58,000 in insurance money that the Shorts received
as a result of Mr. Short's disability. Roswitha Short was removed from the account in September
of 2001. Her husband was never named on the EPTFCU account and passed away in July of
2001. 

 Appellant also maintained an account at EPTFCU. Her account was opened in June of
2000, and was open as of the time of the trial. EPTFCU's records indicate that Appellant kept a
balance of $25 in the account and used it mostly to cash checks. When Appellant applied for
benefits, she did not disclose the existence of this account to DHS.

 As part of his investigation, Olivarez interviewed Appellant. When asked why she failed
to disclose her husband's EPTFCU account on her applications and in her follow-up interviews,
she stated that the money did not matter because it belonged to her mother-in-law and Appellant
could not access it. Roswitha Short submitted a letter to DHS stating that all but $1,500 of the
money in the account was hers and that her son accessed her money for the sole purpose of
paying her bills.

 At trial, the State introduced Appellant's applications for benefits. On Appellant's
August 7, 2000 application, in response to the question "How much cash money do you and all
those who live with you have (in pockets, bank accounts, anywhere else)?," she answered $0. On
or about August 21, 2000, DHS worker Maria Villanueva interviewed Appellant to verify the
information on her application. Appellant confirmed that she had no cash assets.

 EPTFCU bank statements reflect that at any given time in August of 2000, there was at
least a balance of $7,700 in the Steve Forkert/ Roswitha Short account. They also indicate that
the balance in this account never fell below $2,000 during the time periods covered by the counts
on which Appellant was convicted. Appellant neither disclosed this account on any of her
subsequent applications, nor revealed its existence to any DHS caseworker during her post-application interviews.

 The State introduced bank statements from EPTFCU that name Steve Riener Forkert and
Roswitha Short as the account holders. The address listed on the account is the residence of
Steve and Kathryn Forkert. Monthly statements on this account were sent to the Forkert home
approximately every thirty days. The 1099 income tax documents from interest earned on the
account were mailed to the Forkert residence. The Shorts did not live with the Forkerts but
instead maintained their own separate residence.

 At trial, Steve testified that from the time he opened the account in 1984 until the time of
trial, he had maintained his own money in the EPTFCU account and that he continued to use that
account. He further testified that he paid household expenses, such as mortgage payments,
insurance, groceries, and gas from this account. In fact, Steve admitted that it was from this
account that he paid his daily expenses and that this was his primary account. Although later in
his testimony, Steve stated that he and Short were the only two people aware of the account, on
questioning by the State, he conceded that his wife both received benefit from that account and
had knowledge that she received benefit from the account.

Standards of Review

 We review a trial court's decision to admit or exclude evidence under an abuse of
discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). An abuse of
discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to
guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).
We give the trial court wide discretion and latitude in its decision and will not reverse an
evidentiary ruling as long as it is within the zone of reasonable disagreement. Torres, 71 S.W.3d
at 760. Thus, we will not disturb a trial court's ruling on the admissibility of evidence simply
because we might decide differently than the trial judge. West v. State, 121 S.W.3d 95, 100
(Tex.App.--Fort Worth 2003, pet. ref'd), citing Montgomery, 810 S.W.2d at 380.

 In reviewing the legal sufficiency of the evidence, we review the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). The jury, as trier of fact, is the sole judge of the weight and credibility of
the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). We may not
re-evaluate the weight and credibility of the evidence nor substitute our judgment for that of the
jury. King v. State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Instead, we determine if both
the explicit and implicit findings of the trier of fact are rational by viewing all the evidence
admitted at trial in the light most favorable to the verdict. See Adelman v. State, 828 S.W.2d
418, 421-22 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991). Any inconsistencies in the testimony or other evidence are resolved in favor of the
verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

 In contrast, in reviewing the factual sufficiency of the evidence, we consider all the
evidence, as a whole and in a neutral light, to determine whether the jury was rationally justified
in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484
(Tex.Crim.App. 2004), overruled on other grounds by Watson v. State, 204 S.W.3d 404
(Tex.Crim.App. 2006). Evidence can be factually insufficient if the evidence supporting the
verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable
doubt, or if the contrary evidence is so strong that guilt cannot be proven beyond a reasonable
doubt. Zuniga, 144 S.W.3d at 484-85. Our evaluation should not intrude upon the jury's role as
the sole arbiter of the weight and credibility given to any witness's testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997). We will not set aside a judgment unless the evidence
supporting the verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144
S.W.3d at 481. This occurs where the jury's finding "shocks the conscience" or "clearly
demonstrates bias." Id. In addressing the factual sufficiency of the evidence we must consider
the most important and relevant evidence that supports the appellant's complaint on appeal. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

 The trial court permitted the State to introduce EPTFCU bank statements into evidence as
business records under Texas Rule of Evidence 803(6). Appellant objected, arguing that the
bank statements constituted summaries created for the purpose of litigation under Texas Rule of
Evidence 1006.

 Texas Rule of Evidence 1006 provides that:

 The contents of voluminous writings, recordings, or photographs,
otherwise admissible, which cannot conveniently be examined in court may be
presented in the form of a chart, summary, or calculations. The originals, or
duplicates, shall be made available for examination or copying, or both, by other
parties at a reasonable time and place. The court may order that they be produced
in court.


Tex.R.Evid. 1006. Texas Rule of Evidence 803(6) provides, as an exception to the general rule
against hearsay, that records kept in the course of a regularly conducted business activity and
made at or near the time by, or from information transmitted by, a person with knowledge of the
records, are admissible when accompanied by authenticating testimony or affidavit. Tex.R.Evid.
803(6).

 In Issue One, Appellant complains that the bank records in State's Exhibits 6, 6a, 7, and
9 (3) were improperly admitted summaries because the trial court did not require the State to
produce the underlying documents on which they were based. In the alternative, Appellant
asserts that the trial court did not require the State to satisfy what she argues are three elements
that must be satisfied before a party may properly introduce summaries as business records.

 Although these exhibits do summarize account activity, they are in and of themselves
business records and therefore admissible as such. See McAllen State Bank v. Linbeck
Construction Corp., 695 S.W.2d 10, 17 (Tex.App.--Corpus Christi 1985, writ ref'd
n.r.e.)(permitting the introduction of computer printouts of summaries of bank records as
business records). Therefore, the trial court did not abuse its discretion by not ordering the State
to produce the underlying documentation that would be required if the records were summaries
under Texas Rule of Evidence 1006. (4)

 The State solicited the testimony of Nancy Gonzalez, the custodian of records for
EPTFCU to authenticate these exhibits. Even though Ms. Gonzalez admitted that she did not
herself personally review the underlying documents, her testimony was sufficient to authenticate
the exhibits as business records. She testified that the records were kept in the ordinary course of
business and that the entries on which the records were based were made at or near the time of
the transaction by the bank tellers with personal knowledge processing the transactions. The
rules do not mandate that an authenticating witness have actually created the records, as long as
she possesses personal knowledge of how the documents were created. Perry v. State, 957
S.W.2d 894, 899 (Tex.App.--Texarkana 1997, pet. ref'd).

 As the State properly authenticated Exhibits 6, 6a, 7, and 9, we find that the trial court did
not abuse its discretion in allowing their admission into evidence as business records. 
Tex.R.Evid. 803(6). Accordingly, we overrule Issue One.

 In Issues Two through Four, Appellant asserts that there is insufficient evidence to
support her conviction for tampering with government records because the evidence is
insufficient to show that the Shorts were members of the Forkert household and that the Forkerts
used the money in the EPTFCU account as a resource for their household. (5)

 Section 37.10 of the Texas Penal Code provides, in pertinent part, that a person commits
an offense by knowingly making a false entry in a governmental record. Tex.Pen.Code Ann.
§ 37.10(a)(1)(Vernon Supp. 2006). The offense is a state jail felony if the actor's intent is to
harm or defraud someone. Tex.Pen.Code Ann. § 37.10(c)(1). The statute provides a defense to
prosecution under Section 37.10(a)(1) if the "false entry or false information could have no effect
on the government's purpose for requiring the governmental record." Tex.Pen.Code Ann.
§ 37.10(f).

 A rational jury could conclude from the evidence presented at trial that Appellant was
guilty of tampering with a government record. It is undisputed that Appellant did not reveal the
existence of her husband's account with Short. She contends that there was insufficient evidence
to show that Roswitha Short and her husband were members of the Forkert household. However,
Appellant claimed her husband Steve as a household member on her applications, and there was
ample evidence that he was the primary account holder of the EPTFCU account.

 Appellant maintains that DHS could not demonstrate that the funds in the account were
used for the benefit of the Forkert household. A DHS investigator testified, however, that in
determining eligibility for benefits, DHS would look only at an account balance and not what the
money is spent on.

 Appellant also argues that there was insufficient evidence of the culpable mental state
required for a conviction under the Texas Penal Code. She claims that she had no knowledge of
the account and that therefore, she could not knowingly make a false entry about the account. 
She further claims that she did not have to report the EPTFCU account because the money in the
account belonged to her mother-in-law. Finally, Appellant asserts that the evidence was
insufficient for a conviction because her husband Steve testified that she was unaware of the
account and that therefore, there could be no intent to harm or defraud DHS.

 The Texas Penal Code requires that unless the offense defines the requisite culpable
mental state, a person may not be found to have committed a particular offense unless she
"intentionally, knowingly, recklessly or with criminal negligence" engages in the offending
conduct. Tex.Pen.Code Ann. § 6.02(a)(Vernon Supp. 2006). A tampering with government
record offense requires that the person acted "knowingly" in making the false entry. 
Tex.Pen.Code Ann. § 37.10(a)(1). The Texas Penal Code states, in relevant part, that a person
acts knowingly when she "is aware of the nature of [her] conduct or that the circumstances
exist." Tex.Pen.Code Ann. § 6.03(b)(Vernon 2003). Appellant argues that she did not
knowingly omit Steve's EPTFCU account from her DHS applications. The testimony and
evidence, however, suggest otherwise. Her husband testified she knew of the account and there
is evidence that the bank statements and tax documents for the account were mailed to her home. 
We find the evidence, viewed in the light most favorable to the verdict, is legally sufficient to
permit a jury to find that Appellant knowingly failed to provide this information to DHS. 
Therefore, we overrule Appellant's Issues Two through Four to the extent they challenge the
legal sufficiency of the evidence.

 Furthermore, viewing all of the evidence in a neutral light, we find that the evidence is
factually sufficient to support Appellant's conviction. Appellant focuses on the words "resource"
and "household" in arguing that the EPTFCU account was not a resource for the Forkerts, and
that the Shorts did not belong to the Forkert household. The question at issue, however, does not
ask about resources but rather about cash money, held by anyone living with the applicant, in
bank accounts, pockets, or anywhere else. Appellant listed Steve as a household member living
with her on her applications. Steve held an account with cash that exceeded DHS guidelines and
Appellant failed to disclose that account. This is sufficient evidence for a rational jury to find
beyond a reasonable doubt that Appellant knowingly made a false entry on her benefits
applications.

 It is undisputed that Appellant did not notify DHS of Steve's EPTFCU account. Steve
Forkert testified that not only was he the primary account holder, but that this was the main
account from which the Forkert household expenses were paid. Further, the fact that all the bank
statements as well as the 1099 income tax statements went to the Forkert's house undermines her
argument that she was unaware of the account. Moreover, Steve Forkert testified that she was
aware of the account.

 We find that the evidence was factually sufficient to permit the jury to conclude beyond a
reasonable doubt that Appellant knowingly and intentionally tampered with a government record. 
Accordingly, we overrule Appellant's Issues Two through Four as they challenge the factual
sufficiency of the evidence.

 Appellant's Issues Five through Seven challenge the factual and legal sufficiency of the
evidence as to her conviction on counts IV, VI, and VIII for Securing Execution of Document by
Deception.

 A person secures the execution of a document by deception by, in relevant part, causing
another to sign or execute any document affecting property or service or the pecuniary interest of
any person with the intent to defraud or harm. Tex.Pen.Code Ann. § 32.46(a)(1). An offense
under this section is a Class A misdemeanor if the value of the property is between $500 and
$1,500. Tex.Pen.Code Ann. § 32.46(b)(3). It is a state jail felony if the property value is
between $1,500 and $20,000. Tex.Pen.Code Ann. § 32.46(b)(4). A person acts with intent
when it is her objective or desire to engage in the conduct or cause the result. Tex.Pen.Code
Ann. § 6.03(a).

 Appellant argues that the evidence is legally and factually insufficient to allow a rational
jury to find beyond a reasonable doubt that she caused the execution of a document by deception
because DHS did not produce the forms that were allegedly executed by deception. However,
DHS caseworkers testified that they relied on Appellant's application for benefits and her oral
representations to determine that she qualified for benefits. Appellant contends that this
testimony is insufficient to convict but fails to explain why.

 Appellant again professes that she did not intentionally or knowingly, with intent to harm
or defraud DHS, provide false information that caused DHS workers to execute documents by
deception. As we have already discussed, the evidence was both legally and factually sufficient
that she knowingly provided false information to DHS. There is ample testimony that DHS
workers relied on this information when they processed Appellant's applications. Viewing the
evidence in the light most favorable to the verdict, we find that the evidence is legally sufficient
to permit the jury to find Appellant guilty beyond a reasonable doubt of securing the execution of
a document by deception. Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89; Curry, 30 S.W.3d at
406.

 Moreover, considering all of the evidence in a neutral light, we do not find that the
verdict is so weak to be clearly wrong or manifestly unjust. Zuniga, 144 S.W.3d at 481. The
jury could have easily determined from Steve Forkert's testimony, the documentary evidence
presented, and the testimony of DHS caseworkers that Appellant intentionally or knowingly, with
intent to defraud or harm, committed the offense of securing the execution of a document by
deception. Accordingly, we find the evidence factually sufficient to support the verdict. We
overrule Appellant's Issues Five, Six, and Seven.

 In Issue Eight, Appellant complains that the trial court erred in denying her request for a
"mistake of fact" instruction to the jury. Section 8.02 of the Penal Code provides that "[i]t is a
defense to prosecution that the actor through mistake formed a reasonable belief about a matter
of fact if his mistaken belief negated the kind of culpability required for commission of the
offense." Tex.Pen.Code Ann. § 8.02(a). Appellant is entitled to a jury instruction on every
defensive issue supported by the evidence. Miller v. State, 666 S.W.2d 564, 565 (Tex.App.--Houston [14th Dist.] 1984, no pet.). Thus, the question on appeal is whether Appellant's
evidence raised the issue of mistake of fact. King v. State, 919 S.W.2d 819, 821 (Tex.App.--El Paso 1996, no pet.), citing Lynch v. State, 643 S.W.2d 737 (Tex.Crim.App. 1983)(en banc). 
Furthermore, the evidence must show that Appellant's mistake about a matter of fact was
reasonable. King, 919 S.W.2d at 821, citing Miller, 666 S.W.2d at 566.

 Appellant theorizes that the jury could have believed she was operating under a mistake
of fact because she either did not know about the EPTFCU account, or she did not think it was
relevant. The evidence introduced at trial, however, does not support either of these assertions. 
As we previously laid out, Steve Forkert testified that his wife was aware of the account and that
he used it as his primary account to pay household bills. Statements and tax documents relating
to that account were sent to her home. There is sufficient evidence to demonstrate that Appellant
knew of the account.

 Moreover, the DHS form she completed was not ambiguous as to what it required. It
explicitly asks for any cash in any bank accounts held by any household members. While
Appellant argues that Roswitha Short was not a household member it is undisputed that Steve
Forkert was both a household member and the primary account holder on the EPTFCU account. 
Therefore, even if Appellant was mistaken about whether she was required to reveal the
existence of the EPTFCU account, this mistake cannot be said to be reasonable.

 We find that the trial court did not abuse its discretion in refusing to submit the mistake
of fact instruction to the jury. See Wesbrook v. State, 29 S.W.3d 103, 122 (Tex.Crim.App. 2000). 
Appellant's Issue Eight is overruled.

 In her ninth issue, Appellant argues that it was error for the trial court to deny her request
for a directed verdict because she claims a defense under Section 37.10(f) of the Texas Penal
Code, which provides that it is a defense to prosecution for a false entry or false information
charge if the false entry or false information could have no effect on the government's purpose
for requiring the record. Tex.Pen.Code Ann. § 37.10(f). Appellant, however, failed to brief
this issue and has, therefore, waived it. See Tex.R.App.P. 38.1(h); Swearingen v. State, 101
S.W.3d 89, 100 (Tex.Crim.App. 2003). We overrule Issue Nine.

 Having overruled all nine of Appellant's issues, we affirm the judgment of the trial court.



September 13, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Appellant was acquitted on one count of tampering with government records and two
counts of securing execution of document by deception (Counts I, II, and X). The trial court
granted her a directed verdict on count IX, tampering with government records.
2. The Office of Inspector General is the branch of DHS that investigates suspected
welfare fraud.
3. State's Exhibit 6 consists of printouts of the history of the EPTFCU account from
January 1, 2000 to December 31, 2001, with the exception of the months of September and
October of 2000. Exhibit 6a contains statements of the EPTFCU account showing that Short was
added sometime between June and July of 1999. Exhibit 7 is a printout of an overview and
history of Appellant's account at EPTFCU. Exhibit 9 consists of a printout of the history of
Steve Forkert's EPTFCU account which he maintained separate from both his account with Short
and from Appellant's account.
4. Appellant relies on Black Lake Pipe Line Co. v. Union Construction Co., Inc., 538
S.W.2d 80, 93-4 (Tex. 1976), overruled on other grounds by Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989), to support her claims. Appellant appears to be confusing the
business record exception to the general rule prohibiting hearsay with Texas Rule of Evidence
1006, which is more properly viewed as an exception to the best evidence rule. See Tex.R.Evid.
803(6); Tex.R.Evid. 1006; see also Black Lake Pipe Line Co., 538 S.W.2d at 92. Black Lake
Pipe Line Co. discusses the admission of summaries of voluminous records that were
summarized for the purpose of trial. Black Lake Pipe Line Co., 538 S.W.2d at 92. Here, the
challenged exhibits are merely computer printouts summarizing the activity of three bank
accounts, not summaries of voluminous records created for the purpose of trial. Thus, Black
Lake Pipe Line Co. is inapplicable to the case at bar.
5. Appellant does not state whether she is challenging both the legal and factual
sufficiency of the evidence, but because she cites to Clewis v. State, 922 S.W.2d 126
(Tex.Crim.App. 1996), we will assume she intends to challenge the factual as well as legal
sufficiency of the evidence.